## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MANUEL MACIAS., individually and as representative of THE ESTATE OF JASON JOHN PEREZ.; DIANA PEREZ, individually and as representative of THE ESTATE OF JASON JOHN PEREZ.;** *Plaintiffs,* | § § § § § § § § § § | **Case. No. 2:23-cv-00043** **Jury Demanded** |
| **VS.** | § § | |
| **DEWITT COUNTY TEXAS; ET AL,** *Defendants.* | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs, Manuel Macias and Diana Perez, both individually, and as heirs and representatives of The Estate Of Jason John Perez, by and through the undersigned attorney, and bring this lawsuit against Defendants because they caused the needless death of Jason John Perez byway of their deliberate indifference and failure to evaluate and provide appropriate mental health treatment.

## STATEMENT OF CLAIMS

1.    Plaintiffs Manuel Macias and Diana Perez individually, and as the heirs and representatives of the Estate of Jason John Perez (hereinafter "Jason") bring this civil action for compensatory and punitive damages against Defendants: Dewitt County

**1**

Texas, Dewitt County Sheriff Carl R. Bowen, Melissa Guajardo, Krystal Hernandez, Jeremy Torres, Live Oak County Texas, Live Oak Sheriff Larry Busby, The City of Three Rivers Texas, A. Perry, Patricia Carabajal, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell in their individual and official capacities, for violating his civil rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794.

## **JURISDICTION**

2.    This Court has jurisdiction pursuant to 28. U.S.C. 1331 (federal question), 1343 (civil rights), 42 U.S.C. 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367(a).

## **VENUE**

3.    Venue is proper in this Court under 28 U.S.C.1391(b) because the incidents at issue took place in Dewitt County and Live Oak County, Texas, within the United States Southern District of Texas.

## **PARTIES**

### *PLAINTIFFS*

4.    Plaintiff, MANUEL MACIAS, is the decedent's father and a surviving heir of Jason John Perez. He sues in his individual capacity and as an heir-at-law to Jason John

Perez's estate and as a statutory beneficiary under the Texas Wrongful Death Act pursuant to 1988. Jason John Perez died intestate, and there were no probate proceedings arising from his death, as none were necessary. Should an Estate become necessary, Macias will serve as a representative. He is a resident of Dewitt County, Texas.

5.    Plaintiff, DIANA PEREZ, is the decedent's mother and a surviving heir of Jason John Perez. She sues in her individual capacity and as an heir-at-law to Jason John Perez's estate and as a statutory beneficiary under the Texas Wrongful Death Act. Jason John Perez died intestate, and there were no probate proceedings arising from his death, as none were necessary. She is a resident of Live Oak County, Texas.

### DEFENDANTS

6.    DEWITT COUNTY is a municipality in Texas. Dewitt County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the color of law. Dewitt County may be served with citation through the Dewitt County Judge or wherever he may be found.

7.    DEWITT COUNTY SHERIFF CARL R. BOWEN is an individual who may be served with citation at his place of employment Dewitt Sheriff 's Office or wherever he may be found. Dewitt Sheriff Bowen is being sued in his individual capacity and official capacity at all times relevant to this case acted under the color of law. He is the policymaker for Dewitt County, and he failed to train his subordinates on

identifying disabilities under the ADA and Texas Human Resources Act, accommodating individuals who are in need, and not discriminating against those with disabilities in serious medical mental health needs of detainees, and as a result of the failure to train his subordinates it was the moving for behind Jason's federally protected rights being violated.

8. MELISSA GUAJARDO, was a Sergeant at the Dewitt County Jail at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Dewitt County Office of the Sheriff. She is sued in her individual capacity for punitive and compensatory damages. She can be served at the Dewitt County Office of the Sheriff - 208 East Live Oak Street, Cuero, Texas 77954 or wherever she may be found.

9. KRYSTAL HERNANDEZ, was a corporal at the Dewitt County Jail at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Dewitt County Office of the Sheriff. She is sued in her individual capacity for punitive and compensatory damages. She can be served at the Dewitt County Office of the Sheriff - 208 East Live Oak Street, Cuero, Texas 77954 or wherever she may be found.

10. JEREMY TORRES, was an officer at the Dewitt County Jail at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Dewitt County Office of the Sheriff. He is sued in his

individual capacity for punitive and compensatory damages. He can be served at the Dewitt County Office of the Sheriff - 208 East Live Oak Street, Cuero, Texas 77954 or wherever he may be found.

11.    LIVE OAK COUNTY, is a municipality in Texas. Live Oak County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the color of law. Live Oak County may be served with citation through the Live Oak County Judge or wherever he may be found.

12.    LIVE OAK COUNTY SHERIFF LARRY BUSBY is an individual who may be served with citation at his place of employment Live Oak Sheriff 's Office or wherever he may be found. Live Oak Sheriff Busby is being sued in his individual capacity and official capacity at all times relevant to this case acted under the color of law. He is the policymaker for Live Oak County law enforcement. He is responsible for not only training his officer's on the street but also in the jail. His officers on the street were trained to identify and adequately respond to a person with a disability his failed to train his jailer identifying disabilities under the ADA and Texas Human Resources Act, accommodating individuals who are in need, and not discriminating against those with disabilities in serious medical mental health needs of detainees, and as a result of the failure to train his subordinates it was the moving for behind Jason's federally protected rights being violated.

13.    He failed to train his jailers and failed to supervise those whom he delegates his

**5**

subordinates on to identify serious medical mental health needs of detainees, and as a result of the failure to train his subordinates it was the moving force behind Jason's federally protected rights being violated.

14.   CITY OF THREE RIVERS is a municipality in Texas and a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the color of law. It may be served with citation through the City manager or Mayor or wherever he/she may be found.

15.   ANALICIA PERRY (also known as Analicia Vasquez), was a corporal at the Live Oak County Jail at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Live Oak County Sheriff's Office. She is sued in his individual capacity for punitive and compensatory damages. She can be served at the Live Oak County Sheriff's Office - 200 Larry R Busby Dr, George West, Texas 78022 or wherever she may be found.

16.   ANALICIA VASQUEZ, was an officer at the Live Oak County Jail at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Live Oak County Sheriff's Office. She is sued in her individual capacity for punitive and compensatory damages. She can be served at the Live Oak County Sheriff's Office - 200 Larry R Busby Dr, George West, Texas 78022 or wherever she may be found.

17.    PATRICIA CARBAJAL, was a health care provider for the Coastal Plains Community Center at all relevant times, and was acting under color of law and as the agent, and, as a matter of law, the official representative of the Coastal Plains Community Center. She is sued in her individual and official capacity for punitive and compensatory damages. She can be served at the Coastal Plains Community Center - 2808 Industrial Loop, Beeville, Texas 78102 or wherever she may be found.

18.    COASTAL PLAINS COMMUNITY CENTER ("CPCC"), is a health care provider located in Portland, Texas. CCPC's high-ranking policymakers, including Leo Trejo, reside and work in Portland, Texas. CPCC provides healthcare to Live Oak County Jail inmates. CPCC is a recipient of federal funds, and is sued for declaratory, and compensatory relief under federal law. It can be served by serving its Chief Executive Officer, Leo Trejo, at 200 Marriott Drive, Portland, Texas 78374 - or wherever he may be found.

19.    CHIEF EXECUTIVE OFFICER, LEO TREJO, is being sued in his individual capacity and official capacity at all times relevant to this case acted under the color of law. He can be served at 200 Marriott Drive, Portland, Texas 78374 - or wherever he may be found.

20.    CHIEF MEDICAL DIRECTOR, DR. UMAMAHESWARA MARUVADA, is being sued in his individual capacity and official capacity at all times relevant to this

case acted under the color of law and with medical negligence. He can be served at 200 Marriott Drive, Portland, Texas 78374 - or wherever he may be found.

21. CLINIC DIRECTOR, LINDA MADRIGAL, is being sued in her individual capacity and official capacity at all times relevant to this case acted under the color of law. She can be served at 2808 Industrial Loop, Beeville, Texas 78102 or wherever she may be found.

22. GULF BEND MHDD, is a health care provider located in Victoria. Gulf Bend's high-ranking policymakers, including Jeffrey Tunnell, reside and work in Victoria. Gulf Bend provides healthcare to Dewitt County Jail inmates. Gulf Bend is a recipient of federal funds, and is sued for declaratory, and compensatory relief under federal law. It can be served by serving its Chief Executive Officer, Jeffrey Tunnell, at 6502 Nursery Drive, Suite 100, Victoria, Texas 77904 - or wherever he may be found.

23. CHIEF EXECUTIVE OFFICER, JEFFREY TUNNELL, is being sued in his individual capacity and official capacity at all times relevant to this case acted under the color of law. He can be served at 6502 Nursery Drive, Suite 100, Victoria, Texas 77904 - or wherever he may be found.

## FACTS

24. Jason's mental health and intellectual struggles were first documented by his middle school in Kenedy ISD. At that time, he was diagnosed with ADHD, Bi-Polar

8

disorder, and depression. He was treated and prescribed medication by Camino Real. This treatment spanned into his high school years.

25. Around 2014, Jason was arrested in connection to a murder involving him, his older brother, and other co-defendants. He was incarcerated for almost a year at the Atascosa Juvenile Detention Center as he awaited trial. During that time, he was diagnosed as having anger issues, Bi-polar disorder, Paranoid schizophrenia, and depression.

26. The mental health crisis that eventually took Jason's life began 6 to 8 months before his death and spanned multiple counties. In those months Jason's mother made repeated calls to the Live Oak County Sheriff's office and Coastal Plains Community Center begging for serious help as Jason progressively lost touch with reality and became more violent. His deterioration reached a point where Ms. Perez had to seek crisis intervention for herself as she struggled with the pain and stress of seeing Jason lose himself.

27. On November 16, 2020 at 2:58pm, Jason was arrested by Dewitt County Sheriff Officer K. Fowler on a public intoxication charge on the 200 block of West 8th Street, Yorktown, Texas.

28. Roughly an hour and a half later, he was booked into the Dewitt County Jail and searched by Corporal Ronny Beldin. Jason gave written consent to be treated at that time.

29.    At 3:57pm, Corporal Hernandez conducted a medical observation, wherein she

indifferently documented that Jason did not appear to be under the influence of

drugs or alcohol, facts inconsistent with his arresting offense of public intoxication

one hour prior. She also documented that he did not appear to need immediate

psychiatric treatment. In short, she used the blanket answer of "NO" to all fields on

the form.

30.    By 5:00pm, Corporals Hernandez and Beldin had taken note of Jason's severe

delusions and paranoia. This was reflected in their Screening for Suicide and

Medical/Mental/Developmental Impairments Form. Specifically, they noted that

Jason appeared to possibly be under the influence of methamphetamine because of

his obvious paranoia. It was noted that he heard and responded with voices that

were not there. Additionally, it was noted that he was worried the El Chapo Guzman

cartel along with the U.S. government and local law enforcement were actively trying

to hurt or kill him, and he needed to flee to Kentucky. Further, it was noted that

Jason's behavior was unusual, strange, unfocused, and delusional. Corporals

observed that he was unable to focus his pupils. Based on the instructions provided

on the form itself, Hernandez reported this to the magistrate, mental health, and

medical providers at various points between 4 and 5 pm that same day.

31.    In Corporal Hernandez's form report to the Magistrate Judge, she stated that the

report was based on Jason's own admission of suffering from severe mental health

**10**

issues and jail staff observations. She detailed that Jason was hearing voices others did not hear, and was worried someone was trying to hurt or kill him (namely the El Chapo Guzman Drug Cartel). She claims that he entered the jail exhibiting strange behavior and making threats to sue everyone. Further, Jason was unable to focus, and had pinpoint pupils.

32.    Despite all of the documented and exhibited symptoms which qualified Jason for a Mental Health/Emergency Detention Hold, no action was taken by the magistrate or any other jail officials to follow state law requiring that Jason be preliminarily evaluated by a qualified physician.

33.    Three days later, at 11:47 pm on November 19, 2020, Jason was arrested a second time by Dewitt County Sheriffs for public intoxication at 507 West Main Street, Yorktown, Texas by Officer Juan Ruiz.

34.    At 1:17am, Jason was searched and booked into the Dewitt County Jail by Officer Jeremy Torres.

35.    Despite having just been in Dewitt County custody only 3 days prior for documented mental health issues, Corporal Hernandez, Sergeant Guajardo, and Officer Torres collectively answered "NO" to all relevant mental health issues which he was clearly still exhibiting. As a result, no referral was made to the magistrate as required by state law. It was even documented that no CCQ match was made despite

his extensive mental health history and the referral to the magistrate and health care providers on November 16, 2020.

36. According to record searches, no criminal or probate court filings were made by the Dewitt County Sheriff's office regarding or against Jason John Perez. This obviates the fact that gatekeeping county officials were indifferent towards processing his petitions for help.

37. With Jason's father being unable to care for his adult son's worsening mental health crisis, he moved back in with his mother in Three Rivers, Texas. Unfortunately, his mental health emergency was too much for his mother as well, and the Live Oak County Sheriff's Office would soon be involved as the situation grew more violent and destructive.

38. In the early morning hours of December 5, 2020, Jason's mother, Diana Perez, called the police after Jason broke a window and was becoming increasingly confrontational with her. Because no one saw Jason break the window, and he was denying having done it, Officer Andy Flores was unable to arrest him or make an emergency detention.

39. However, Officer Flores did note his delusions and paranoia, which were consistent with reports from Dewitt County, and made a referral for mental health help on Jason's behalf to "APS" worker "Ms. Ishmael" who was reportedly assigned the following morning, but failed to actually provide mental health treatment.

40.    Specifically, Officer Flores noted that he was very familiar with Jason and the Perez family from prior calls made by his grandmother who was suffering from Alzheimer's. Flores noted that Jason never exhibited this type of behavior in the past, and that he did not appear to be experiencing the hallucinations as a result of drug or alcohol use. He also noted Ms. Perez and her boyfriend's insistence that Jason needed in-patient treatment, because he had been posting their address to social media forums inviting and antagonizing cartel members and fans to engage in violence over his imagined affair with El Chapo Guzman's wife. Evidencing the depth of his delusion, Jason, who was 22 years old, could not remember how old he was when asked by Officer Flores.

41.    At or around 7:30 am on December 7, 2020, Jason's mother called 911 after she was forced to barricade herself in her bedroom after Jason, still acting in a delusional state, began threatening her with death/violence and destroying their home after she refused to drive him to Kentucky to reunite with his imagined lover, Emma Coronel, wife of El Chapo Guzman.

42.    Upon their arrival at the Perez residence, Deputy Andres Flores, Officer Glenn Tadlock, Chief Stroleny, and Officer Guerra all noted that Jason had cut off the power, kicked out water pipes in the kitchen, broken mirrors in the living room, and torn down drapes to build a fortress. Ms. Perez repeatedly expressed that she took Jason's threats to kill her as legitimate and was in imminent fear for her life.

43. Jason, who was not at the residence when officers arrived, was located walking along a highway. When approached by officers, he did not resist and was placed in officer Tadlock's patrol vehicle. Tadlock noted that Jason immediately began saying alarming things such as: his pregnant girlfriend (wife of cartel boss El Chapo) was being held in a bunker; and Governor Abbot was calling him and asking officers if they could hear his phone ring despite him not having a phone.

44. Tadlock documented that at this point it was clear Jason was hallucinating, and in need of mental health services to address his crisis, yet again he was not provided with medical care for his known serious mental health needs. He expounded by saying, he is paranoid and delusional, and at risk of harm based on behavior displayed on the morning of December 07, 2020. This documentation was also signed off on by jailer Analicia Perry.

45. At 8:45 am, Deputy Flores completed a "Notice of Emergency Detention" form as Jason was transported to the Live Oak County Jail. He stated he has reason to believe and does believe Jason was experiencing a mental health crisis. He elaborated that Jason's current warped sense of reality presented a risk of serious harm. He listed all the things Jason broke, his threats of harm and death against his mother, and detailed his hallucinations.

46. He also explains that Jason had been listing his mother's home address on social media for confrontation with cartel members and fans, and that he (Flores) was

personally aware that this <u>behavior had been going on for weeks</u>. Shows signs of mental illness, possibly schizophrenia. Flores listed Ms. Perez, Officer Tadlock, and himself as those with personal knowledge of the behavior. Flores also noted that an APS caseworker had been recently assigned to help Jason prior to the calls on December 7, 2020.

47.    Lastly, Flores asked that the mental health care provider speak with him personally before or after screening Jason, so that he could provide more insight as the situation was worsening.

48.    Once at the Live Oak County Jail, a series of intake documentation was conducted. On the "Medical Screening" form, Tadlock failed to indicate the fullness of Jason's obvious serious medical needs by not marking that he was delusional, paranoid, confused, and hallucinating. Instead, Tadlock only circled "mentally ill." He failed to provide medical mental health treatment for Jason's serious medical needs.

49.    On the "Screening for Suicide and Medical/Mental/Dev. Impairments" Form, Corporal A. Perry and Supervisor Analicia Vasquez failed to include the most relevant symptoms and issues suffered by Jason. "NO" was indicated on fields asking if Jason was worried if someone was trying to hurt him and if he was showing signs of mental illness. This was false information. Both of these responses were material and inconsistent with everyone else involved in Jason's arrest and incarceration. This inaccurate evaluation was then indifferently forwarded to the

Magistrate, mental health, and medical health care providers to assure that Jason would not receive medical care for his serious medical mental health needs.

50. Corporal A. Perry continued providing incorrect and incomplete documentation when she completed the "Inmate Mental Condition Report to Magistrate" form. Specifically, she left unchecked the most relevant and obvious criteria, "Subject is violent and appears to be a danger to themselves or others."

51. Medical booking reports submitted for Jason show the CCQ system, which is used to keep track of inmate/detainee mental health treatment from county to county, was defective because it did not show any of Jason's recent treatment history in Dewitt county or from more recent mental health services in Live Oak County.

52. Patricia Carabajal completed the Coastal Plains Community Center MHMR Assessment and subsequently used this as support for her indifferent determination that Jason did not need further in-patient treatment. In documenting his symptoms Carabajal only marked mania and mood swings as current symptoms, and did not note his bizarre/inappropriate behavior, hallucinations, paranoia, delusions, and anxiety. Carabajal used totally unfounded information to lobby against his hospitalization, making her the only person to openly do so. Yet another lost chance of providing medical mental healthcare.

53. During the course of Jason's telephone screening with Carabajal, multiple jailors and APS agent Gaye Lynn Olivarez noted that they overheard Jason repeating the same

delusional thoughts to Carabajal. They also stated that Jason was under the belief that he needed to pick up his medication from President Donald Trump at the White House.

54.    Shortly thereafter, Jason was released from the Live Oak County Jail on December 7, 2020, without receiving any medical mental health care.

55.    Irate, Ms. Perez, who had been calling the jail for updates, sent text messages to Deputy Flores, informing him that Jason had been released. Flores, who was off duty, instructed Ms. Perez to contact the Sheriff while he followed up with investigators about pressing charges in the hopes of getting him treated.

56.    After being released, Jason began to aimlessly wander around the town, until a patrol officer mistook Jason for someone else and gave him a ride to the Dairy Queen in Three Rivers.

57.    At or around 9:40 pm, still in a delusional state Jason was struck by an on-coming minivan driving between 65-70 miles per hour as he walked in the middle of the lane of oncoming traffic. Jason was fatally injured and died on the scene.

58.    Deputy Flores, after conducting a thorough investigation into the matter left his final thoughts that, during his past encounters with Jason, he did know Jason was delusional as a result of an untreated mental health crisis. He stated that Jason was not in his right state of mind, and was in a constant state of delusion, which I believe

made him oblivious to the world, his surroundings, and the dangers of walking in the

roadway.

## COUNT I- Federal Civil Rights Claim Under 42 U.S.C. 1983 for Violation

## of the Fourth and Fourteenth Amendments

59.    Defendants Dewitt County Texas, Dewitt County Sheriff Carl R. Bowen, Melissa

Guajardo, Krystal Hernandez, Jeremy Torres, Live Oak County Texas, Live Oak

Sheriff Larry Busby, The City Of Three Rivers Texas, A. Perry, Analicia Vasquez,

Patricia Carabajal, Coastal Plains Community Center, Leo Trejo, Umamaheswara

Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell ……….all owed

Jason the affirmative duties of care and protection because he was involuntarily

detained in response to his observed and documented mental health crisis.  During

his time under the restraint of the Dewitt and Live Oak County Sheriff's Offices,

Jason was restrained of his liberty and unable to provide for his basic human needs

of medical care and reasonable safety. The conduct of both Sheriff's Offices and

their officials as detailed above and below in this complaint fell below the levels

protected by the Fourth Amendment and the Due Process Clause.

60.    The Fourteenth Amendment grants persons in custody a right not to have officials

disregard excessive risks to their safety, and not to have their serious medical needs

met with deliberate indifference. Further, when a healthcare provider who is the sole gatekeeper to more extensive medical treatment consciously disregards the risk of future harm and denies the detainee access to said treatment such action is classified as deliberately indifferent. More to the point, when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all amounts to deliberate indifference.

61.  Here, Jason had several run-ins with both the Dewitt County Sheriff's Office and the Live Oak County Sheriff's Office in the months leading up to his death. Further, his mother made repeated calls to 911, law enforcement, and local mental health resources requesting that her son be detained and committed to address his ongoing and worsening crisis. In essence all of these encounters were opportunities for each county and their contracted mental health care providers, Gulf Bend and Coastal Plains to follow statutory provisions put in place to ensure that individuals detained for severe and dangerous mental health issues receive a level of care and accommodation to protect their reasonable safety, meanwhile avoiding cruel and unusual punishment.

62.  In this case all the defendants knew or should have known of Jason's mental health history was well documented in the CCQ system[1]. Jason's mental health diagnoses

---

[1]Texas Administrative Code Rule §273.5  (c) Mental Health/Intellectual and Developmental Disabilities History Check. Each jail shall:

  (1) check each inmate upon intake into the jail against the Texas Health and Human Services Commission CCQ system to determine if the inmate has previously received state mental healthcare or has a known

and treatment record for anger issues, Bi-polar disorder, Paranoid schizophrenia, and depression goes back to middle school and his time incarcerated in the Texas Department of Juvenile Justice. Further, with each passing incident, if reported properly, a more detailed and comprehensive account of his worsening condition would have been documented to provide additional notice for future encounters.

63.    Jason was initially detained by Dewitt County Sheriff's for public intoxication on two separate occasions only days apart, and on both occasions it became apparent that he was suffering from a mental health crisis and not criminally publicly intoxicated.

64.    In the first incident, Jason was referred to Magistrate Judge, however Jason was never seen by a physician and no such physician report was attached to the magistrate referral from the Dewitt County Sheriff's Office. This falls below standards laid out in the Texas Health and Safety Code Chapter 573, and amounts to deliberate indifference towards his ongoing mental health crisis by Dewitt County and Gulf Bend officials. Further, no response was ever received from the Dewitt County Magistrate, and Jason simply allowed to walk out of the jail having received no medical attention or evaluation despite such need being obvious. By its very

---

intellectual or developmental disability, unless the inmate is being housed as an out of state inmate or a federal inmate on a contractual basis;

(2) maintain documentation to be available at the time of inspection showing that information for each inmate designated in paragraph (1) of this subsection was submitted for CCQ/IDD system checks, to include notification to the magistrate and the Local Mental Health Authority or Local Intellectual and Developmental Disabilities Authority as per CCP 16.22(a)(1); and

(3) include any relevant mental health or intellectual and developmental disability information on the mental health screening instrument and, if sentenced to the Department of Criminal Justice, on the Uniform Health Status form.

meaning, this course of treatment was deliberately indifferent to his serious medical needs that just resulted in him being arrested while wandering through the streets.

65. Three days later, Jason was arrested by Dewitt County Officials a second time for alleged public intoxication. However, during this period of confinement inside the Dewitt County Jail, Corporal Hernandez, Sergeant Guajardo, And Officer Torres all completely failed to properly evaluate and report Jason's ongoing mental health crisis. They evidenced their disregard for the same issues documented days prior by documenting a blanket "NO" to all relevant mental health screening questions. Further, Corporal Hernandez, Sergeant Guajardo, And Officer Torres acted as gatekeepers to more specialized care and failed in that role by not making any referral for mental health screening or a mental health hold with the magistrate despite their personal knowledge of Jason's situation and his documented history of severe mental illness. As a result, Jason was allowed to leave Dewitt County custody a second time with absolutely no form of mental health treatment or aftercare despite his obvious serious needs and substantial risk of harm.

66. Weeks later, after moving to Live Oak County to live with his mother; the same mental health issues had grown more out of control and dangerous to Jason and those around him. As detailed in the fact section, Jason's mother made numerous calls to 911 and the Live Oak County Sheriff's Office as Jason was causing serious property damage, and making serious threats against her life directly and indirectly

by his Facebook posts taunting cartel members with invitations to his mother's actual address. Live Oak County Deputy Flores was the leading officer in helping Jason as he was familiar with Jason's disposition when in a sound frame of mind and could see the drastic erosion of his mindset. With in a span of two days, Live Oak Sheriffs visited Ms. Perez's residence two times, and on the second visit Jason was detained without a warrant as it was obvious to them that Jason was facing an "extreme emergency" as required in Texas Health and Safety Code 573.001 for a warrantless emergency detention order. At the time of his detention at least four Live Oak County Sheriffs acted as witnesses to this extreme crisis and were in agreement with his warrantless detention.

67.    Based on Dewitt County's failure to update the CCQ system, no mention of these incidents was present when Jason was processed into the Live Oak County Jail. Further, in spite of Deputy Flores' verbal and written requests and referral about the extent of Jason's issues, Live Oak County jail staff was indifferent in completing his intake documentation.

68.    Namely, Corporal A. Perry And Supervisor Analicia Vasquez breached their duties owed to Jason by disregarding their knowledge and observation of Jason's mental health crisis by providing blanket answers of "NO", and failing to document obvious symptoms on relevant mental health screening forms. By doing so, Perry And

Vasquez abused their position as gatekeepers to a thorough evaluation and future specialized treatment.

69. Equipped with a mixture of thorough and indifferent reporting from certain Live Oak Officers, and incomplete CCQ data, Patricia Carabajal of Coastal Plains MHMR intentionally ignored all the information she was given regarding the severity of of Jason's crisis and even openly contradicted her own findings in deciding that Jason did not meet the criteria for access to further mental health treatment. Namely, her cursory treatment amounted to no treatment at all as she found that Jason was not exhibiting bizarre behavior, hallucination, paranoia, delusions, or anxiety. Further, Carabajal ignored all reports and contradicted herself in indicating that Jason was not at severe risk of serious harm by stating that Jason was not suffering from disorientation, delusional thinking, or responding to visual and auditory hallucinations; all of which were obvious.

70. This failure to provide for Jason's basic human needs while detained in their custody also amounted to a violation of his protected substantive Due Process rights.

71. Plaintiff claims damages for the wrongful death of Jason John Perez and for his loss of income, services, companionship, and for funeral and burial expenses under 42 U.S.C. 1983 and 1988.

72. Defendants Dewitt County Texas, Dewitt County Sheriff Carl R. Bowen Office, Gulf Bend MHDD, and Jeffrey Tunnell all failed to care for and protect Jason while

he was in Dewitt County custody by way of their failure to train, supervise, and discipline officers and subordinates on how to properly document and refer or treat detainees suffering from severe mental health crises. As evidenced by Dewitt County's official's repeated failure to properly document Jason's issues, Dewitt County Texas, Dewitt County Sheriff Carl R. Bowen Office, Gulf Bend Mhdd, and Jeffrey Tunnell training policies were inadequate to ensure a detainee was properly considered. As reflected in the repeated interactions with Jason, these policy makers were deliberately indifferent in correcting these observation and documentation failures of jail staff and mental health providers. Further, in Dewitt County Jason received absolutely no mental health evaluation by physician as required by state law, and never responded to by the local magistrate. This indifference towards those with mental health issues by Dewitt County Texas, Dewitt County Sheriff Carl R. Bowen Office, Gulf Bend Mhdd, and Jeffrey Tunnell led to the deterioration of Jason's mental state and eventual death weeks later. This policy or custom was evidence by the repeated indifference on multiple occasions. Lastly, no "community safety plan" was put in place to prevent future harm.

73. Live Oak County Texas, Live Oak Sheriff Larry Busby, The City Of Three Rivers Texas, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell all failed to care for and protect Jason while he was in Live Oak County custody by way of their failure to

train, supervise, and discipline officers and subordinates on how to properly document and refer or treat detainees suffering from severe mental health crises. As evidenced by Live Oak County official's repeated failure to properly document Jason's issues, Live Oak County Texas, Live Oak Sheriff Larry Busby, The City Of Three Rivers Texas, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell training policies were inadequate to ensure a detainee was properly considered. As reflected in the wholly contradictory documentation, these policy makers were deliberately indifferent in correcting these observation and documentation failures of jail staff and mental health providers. The pervasive nature of inconsistent documentation by Live Oak County officials indicates a culture and policy of deliberate indifference towards suffering from mental health issues.  Further,  this indifference towards those with mental health issues by Live Oak County Texas, Live Oak Sheriff Larry Busby, The City Of Three Rivers Texas, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell led to the deterioration of Jason's mental state and eventual death weeks later.

74.     Live Oak County Texas, Live Oak Sheriff Larry Busby, The City Of Three Rivers Texas, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell were all aware that since 2000

The Coastal Plains Community Center catchment area (Aransas, Bee, Brooks, Duval, Jim Wells, Kenedy, Kleberg Live Oak, and San Patricio counties) experienced the largest increase in the suicide death rate with an increase of 127.3 percent, thereby putting them on notice of the need to address and improve their response to serious mental health issues that could foreseeably lead to death.

75.    Dewitt County Texas, Dewitt County Sheriff Carl R. Bowen Office, Gulf Bend Mhdd, Jeffrey Tunnell, Live Oak County Texas, Live Oak Sheriff Larry Busby, The City Of Three Rivers Texas, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, and Linda Madrigal caused these constitutional violations by reason of their deliberately indifferent practice and custom of failing to properly train, supervise and discipline correctional and investigative officers in the detecting, reporting, and protecting mentally ill inmates from harm.

76.    In addition to other grounds stated, this course of treatment towards Jason's mental health issues was unfoundedly different and of lesser quality to a similarly situated detainee or arrestee who suffered from a physical serious medical condition. There is no rational basis for this discrepancy of treatment and is violative of the Equal Protection Clause of the 14th Amendment.

## COUNT II- Federal Civil Rights Violations Under

## 42 U.S.C. 1983, 42 U.S.C. 12132, 42 U.S.C. 12101, 29 U.S.C. 794, and

## Monell Liability

77.   Defendants Dewitt County Texas, Dewitt County Sheriff's Office, Melissa Guajardo, Krystal Hernandez, Jeremy Torres, Live Oak County Texas, Live Oak Sheriff's Office, The City of Three Rivers Texas, A. Perry, Analicia Vasquez, Patricia Carabajal, Coastal Plains Community Center, Leo Trejo, Umamahewara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell each individually and jointly discriminated against Jason because of his known disabilities: life threatening mental illness, when they denied him the benefits of the services, programs and activities to which he was entitled as a person with a mental health disability, including but not limited to the right to be free of discriminatory or disparate treatment by virtue of his mental disability and addiction, and to due process of the law. As a result, plaintiff's decedent suffered harm in violation of his rights under the laws and Constitution of the United States, 42 U.S.C. 1983, 42 U.S.C. 12132, 42 U.S.C. 12101, 29 U.S.C. 794, and Texas Human Services Resource code.

78.   Each defendants failed to comply with the mandates of 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794 in the following areas:

a. The failure to properly train, supervise and discipline corrections officers regarding crisis intervention techniques for individuals who exhibit the signs and symptom of mental disabilities;

b. The failure to provide adequate training and resources for crisis intervention teams of corrections officers and others to respond to emergencies involving persons with mental health disabilities;

c. The failure of correctional officers to follow established policies, procedures, directives and instructions regarding crisis intervention techniques for individuals who exhibit the signs and symptoms of mental health disabilities.

79. By these actions, defendants have deprived plaintiff's descendants of rights secured by the United States Constitution, 42 U.S.C. 12132, 42 U.S.C. 12101, and 29 U.S.C. 794.

## **COUNT III- Denial of Medical Care pursuant to 42 USC 1983, and Wrongful Death, and Survival Claims under 42 U.S.C. 1988**

80.  Each of the preceding paragraphs is herein incorporated as if restated fully.

81. At all times that Jason was in the Dewitt and Live Oak County Jails, he did not receive any medical attention from medical personnel.

82. Although Jason was clearly suffering from a mental health breakdown as evidenced by the 911 call made by his mother. Neither Dewitt nor Live Oak County County

ever offered him the appropriate mental health evaluation. Instead, he was treated like a criminal, although he committed no crime, he was simply suffering from a mental crisis.

83.    During Jason's stay at the county jail, officers noted his mental health needs but County Jails staff continued to refuse to offer him any medical treatment for his mental health needs.

## COUNT IV- Violations of ADA and Rehabilitation Act Claims, and Texas Human Resources Act.

84.    Each of the preceding paragraphs is herein incorporated as if restated fully. Neither Monell, nor clearly established law standards apply to these claims brought under the Americans with Disability Act and Texas Human Resources Act. Jason was arrested due to the misperception of the effects of his mental illness as criminal activity, namely public intoxication. In addition, they failed to reasonably accommodate Jason's disability in the course of investigation or arrest. Beyond his disability being obvious and well documented, his parents made the jail at Live Oak, and Dewitt aware that Jason was in need of mental help, but they ignored Jason's serious medical need and refused to provide Jason with medical care for his mental health needs. Jason was arrested and charged with public intoxication, although he was not intoxicated. His disability was open and obvious. The officers chose to ignore Jason's mother's statements and her requests for treatment for her son. He was released

without help and died as a result. He was treated differently from others in the jail with other medical needs because his serious medical need was mental in nature and not physical. He was outright denied medical care for his known and recognized serious medical needs.

85.  Dewitt County delegated its duty to provide mental health care to Gulf Bend MHDD, because Jason was at risk of serious harm. He was released as he maintained an altered mental state and they failed to secure or execute a mental warrant or treat him despite the need being evident. Dewitt and Guld Bend are each public entities and Jason was denied the benefits of medical care services when he was arrested.

86.  Live Oak County appropriately took custody of Jason at the request of his mother and assumed the obligation and duties to provide care to Jason. It delegated its duty to provide mental health care to Coastal Plains because Jason was at risk of serious harm and just as Dewitt county. Coastal Plains failed to provide care or attempt to secure or execute a mental warrant or treat him despite the need being evident. misperceived the effects of a disability as illegal conduct he was arrested for public intoxication although he was sober but in an altered mental state.

87.  Live Oak and Coastal Plains are each public entities and Jason was denied the benefits of medical care services when he was taken into custody.

88.    He was released from Live Oak as he maintained an altered mental state, misidentified as intoxication, and in need of serious medical care. He was not transported to a hospital nor did they assure that he would have a safe transport home as a direct result of these actions Jason was killed.

89.    Jason had a qualified disability and Dewitt, Coastal Plains, and Live Oak, and Gulf Bend. His disability affected his major life activities, it was open, obvious, and apparent to Dewitt, and Live Oak defendants. Who both actually knew of his serious health need and acted with deliberate indifference to his suffering. His mother made it clear that he needed help because her son was not thinking clearly and she was deeply concerned.

### COUNT V- Loss of Consortium, and Interference with Familial Relationships under the First and Fourteenth Amendment.

90.    Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein. Plaintiffs bring their individual injury claims for loss of consortium.  He lived in between his father and mother's homes at the time of his death and helped them with a non-exhaustive list of household support, love, support, companionship, society, and affection.

91.    In addition, the egregious nature of the defendant officers on the scene deprived the Plaintiffs their rights under the 1st and 14th amendment to the ongoing familial

relationship with their son when his life was taken by the actions and inactions of the defendants.

## COUNT VI- Wrongful Death and Survival Claims pursuant to TRCP Sec. 71.004, and Sec. 71.021, through 42 USC 1988.

92.   Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein. Defendants Dewitt County Texas, Dewitt County Sheriff's Office, Melissa Guajardo, Krystal Hernandez, Jeremy Torres, Live Oak County Texas, Live Oak Sheriff's Office, The City of Three Rivers Texas, A. Perry, Analicia Vasquez, Patricia Carabajal, Coastal Plains Community Center, Leo Trejo, Umamaheswara Maruvada, Linda Madrigal, Gulf Bend Mhdd, and Jeffrey Tunnell actions toward Jason violated Jason's constitutional rights and wrongfully caused his death. Prior to his death, Jason suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was struck and before he died. No administration pending and that none is necessary. Plaintiff, the Estate of Jason John Perez, has the standing to assert this claim pursuant to Tex. Civ. Prac. & Rem. Code Section §71.0004(a). These Defendants are liable for the wrongful death of Jason because under Texas law "anyone who commands, directs, advises, encourages, procures, instigates, promotes, controls, aids, or abets a wrongful act by another, is

regarded by the law as being just as responsible for the wrongful act as the one who actually committed it."

93.    Chapter 74 Health Care Liability Claims against Gulf Bend, Coastal Plains

94.    In the alternative to the constitutional claims, Plaintiff asserts medical negligence claims against Defendants Clinic Director, Linda Madrigal, Dr. Umamaheswara Maruvada and Patricia Carbajal.

## TOLLING

95.     Plaintiffs assert tolling provisions apply, including but not limited to the discovery rule, and particularly pursuant to Tex. Civ. Prac. & Rem. Code § 16.062.

## SPOLIATION

96.    Plaintiffs' counsel believes that the Defendants record keeping systems contain evidence that is relevant and possibly favorable to the defense. The statements made by witnesses are not original but influenced by Live Oak and Dewitt supervisors. Plaintiff demands Defendants to preserve all evidence that is directly and indirectly related to this matter including all drafts of witness statements and recorded interviews and videos.

## RELIEF

97.    Plaintiff prays that he has a judgment against Defendants for actual damages shown and proven at trial, for prejudgment, post-judgment interest, for costs of court, and all other relief, legal and equitable, to which he is entitled.

Wherefore, Plaintiff requests this Court to Order:

1.  Compensatory damages;

2.  Past pain and suffering

3.  Punitive damages against the individual defendants;

4.  Attorney's fees and costs and common law remedies pursuant to 42 USC Sec.1988;

5.  All other appropriate relief.

    Plaintiff hereby demands a jury trial.


Respectfully submitted,

By: **/s/Terry Henderson Peden**
TERRY HENDERSON PEDEN
ATTORNEY         FOR         THE
DEFENDANT
TX Bar Card No.: 24123963
The Law Group of THP, PLLC.
P.O. Box 1410
Houston, Texas 77251
Phone: 334-544-9471
Fax: +1334-460-9844
Email: THP@thelawgroupofTHP.com
Lead Counsel for Plaintiff

By:**/s/ U.A. Lewis**
U.A. Lewis
SBN: 24076511
FBN: 1645666
The Lewis Law Group
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555

**34**

Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on June 5th, 2023, I served a true and correct copy of the proceeding Plaintiff First Amended Complaint to all parties or counsel of record.

**/s/ U.A. Lewis**

**U.A. LEWIS**