United States District Court
Southern District of Texas
**ENTERED**
December 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MANUEL MACIAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00043 |
| | § | |
| DEWITT COUNTY TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending are Defendants' three Motions to Dismiss. (D.E. 27; D.E. 28 and D.E. 29). Plaintiffs have responded. (D.E. 32).[1] A reply has also been filed. (D.E. 35). For the reasons stated below, the undersigned **RECOMMENDS** the Motions be **GRANTED in part**. (D.E. 27; D.E. 28 and D.E. 29). As set forth in more detail below, the undersigned **RECOMMENDS** the Plaintiffs, on behalf of the Estate of Jason Perez, have stated plausible 1983 claims against defendants Analicia Perry, Analicia Vasquez and Patricia Carabajal in their individual capacities. The undersigned **RECOMMENDS** these claims be retained and all of Plaintiffs' other claims be dismissed.

---

[1] Included in their Response, Plaintiffs have asserted an objection and request that the Court strike any facts added in Defendants' Motions to Dismiss, citing to two of Defendants' alleged factual assertions. (D.E. 32, Pages 2-3). For purposes of this M&R, the undersigned has considered the facts as stated by Plaintiffs in their Second Amended Complaint without regard to contested facts. Therefore, Plaintiffs' objection and request to strike is unnecessary.

## I.   BACKGROUND

On December 7, 2020, 22 year old Jason Perez, who Plaintiffs allege had a history of mental illness, was struck and killed by a vehicle driven by a private citizen several hours after he was released from Live Oak County Jail.  Approximately three weeks prior to this time, Mr. Perez was arrested twice for public intoxication and incarcerated in the DeWitt County Jail on November 17 and 20, 2020.  Defendants Melissa Guajardo, Krystal Hernandez and Jeremy Torres are alleged to have worked at DeWitt County Jail during this time and interacted with Mr. Perez during his detention.  Further, Defendant Gulf Bend MHDD was a mental health provider for the DeWitt County Jail, with Defendant Jeffrey Tunnell as its executive director.  After Mr. Perez was released from custody the second time, he left DeWitt County, relocating to Live Oak County to live with his mother.  Shortly thereafter, Mr. Perez was arrested for making terroristic threats to kill his mother and he spent five days in jail on a medical hold before being released.  On December 7, 2020, the same day he was struck by a car and killed, Mr. Perez was again arrested and incarcerated in the Live Oak County Jail on an emergency detention warrant after his mother called 911 reporting his erratic and threatening behavior.  Defendants Analicia Vasquez and Analicia Perry[2] are alleged to have worked at Live Oak County Jail during this time.  While incarcerated, Mr. Perez was assessed by Coastal Plains Community Center, a mental health provider for the jail.  After it was determined Mr. Perez did not show any signs of harming

---

[2] Defendants assert Analicia Perry is the same person as Analicia Vasquez.  (D.E. 27, Page 2).  For purposes of this M & R, the undersigned will accept the facts as pleaded by Plaintiffs as true and consider them separately.

himself or others and did not require inpatient treatment, he was released the same day he was arrested.  Defendant Patricia Carabajal is alleged to have worked for Coastal Plains during this time and to have interacted with Mr. Perez.  Several hours after his release, Mr. Perez was struck by a vehicle and killed.

On November 16, 2022, Plaintiffs, Mr. Perez's father and mother, filed suit in the 24th Judicial District Court in DeWitt County, Texas.  (D.E. 1).  Defendants subsequently removed the case to this Court on February 3, 2023.  (D.E. 1).  On April 25 and May 2, 2023, Defendants filed two Motions to Dismiss.  (D.E. 11 and D.E. 12).  Plaintiffs then filed a First Amended Complaint on June 6, 2023.  (D.E. 14).  As a result, the Court subsequently terminated Defendants' Motions.  On July 5, 2023, Defendants again filed several Motions to Dismiss.  (D.E. 19, D.E. 20 and D.E. 21).  The case was then referred to the undersigned.  (D.E. 22).  On July 18, 2023, the undersigned held a hearing, advising Plaintiffs that it appeared their amended complaint was deficient for many of the reasons set forth in the Defendants' Motions.  (D.E. 24).  Therefore, the undersigned granted Plaintiffs "one, final opportunity to amend" their complaint, denying the pending Motions to Dismiss as moot.  (D.E. 24).  On August 17, 2023, Plaintiffs filed their Second Amended Complaint.  (D.E. 25).  Pending are Defendants' three Motions to Dismiss.  (D.E. 27; D.E. 28 and D.E. 29).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In

deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

      "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted).

      "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. (citation omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" to be entitled to the assumption of truth.  *Id*. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief.").  Under Rule 8(a)(2), plaintiffs are not required to include "detailed factual allegations," but at the same time "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is needed.  *Iqbal*, 556 U.S. at 678.  "To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'"  *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citing *Twombly*, 550 U.S. at 555).

## III.   PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs assert six counts[3] against all Defendants:

Count I:       Fourth and Fourteenth Amendments Claim under 42 U.S.C. § 1983;

Count II:      *Monell* liability claims under 42 U.S.C. § 1983 based on failure to train and supervise on matters involving individuals with mental illness;[4]

Count III:     Denial of Medical Care pursuant to 42 U.S.C. § 1983 and Wrongful Death and Survival claims pursuant to 42 U.S.C. § 1988;

---

[3]Plaintiffs fail to plead clearly which Defendants they are suing under Counts III, IV and V.  (D.E. 25, Pages 35-40).  Upon review of the allegations under these headings, the undersigned has addressed Counts III and V as to all Defendants.  Reviewing Count IV, the undersigned considers it as pleaded against DeWitt County, Live Oak County, Gulf Bend and Coastal Plains because a plaintiff may sue only the public entity, not individual defendants, for violating the ADA or RA.  (D.E. 25, Pages 37-39); *Nottingham v. Richardson*, 499 F. App'x 368, 376 n.6 (5th Cir. 2012); *Smith v. Hood*, 900 F.3d 180, 184 n.6 (5th Cir. 2018).

[4]Counts II and Counts IV assert similar claims.  While Count II asserts a claim for *Monell* liability, it also alleges Defendants "failed to comply with the mandates" under the ADA and RA, as does Count IV.  (D.E. 25, Pages 33-34 and 37-39).  Further, Counts III and VI assert similar grounds for relief pursuant to 42 U.S.C. § 1988 for wrongful death and survival claims.  (D.E. 25, Pages 35-36 and 40-41).

Count IV:    Violations of the Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA") and Texas Human Resources Act ("THRA")

Count V:     Loss of Consortium and Interference with Familial Relationships under the First and Fourteenth Amendments; and

Count VI:    Texas Wrongful Death and Survival Claims.

## IV.    42 U.S.C. § 1983 Claims

Plaintiffs assert several of their claims arise under 42 U.S.C. § 1983, specifically Counts I, II and III.  Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (citing 42 U.S.C. § 1983).  As such, to state a claim under § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or a federal law; (2) and that the violation was committed by a person acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  A person for these purposes includes a local governing body or municipality if the action claimed to be unconstitutional was implemented by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" that body's officers.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 659 (1978) (Local governments may also be sued for constitutional deprivations pursuant to a custom even if that custom has not received formal approval).  Further, a private company that has been contracted to provide medical services for a county jail is treated as a municipal or local government entity for the purposes of 42

U.S.C. § 1983, and therefore, claims against such a company are also analyzed as "*Monell*"

claims.   *Kibbey v. Collin Cty. Det. Facility*, No. 4:21-cv-799-SDJ-CAN, 2023 WL

2598666, at *3 (E.D. Tex. Mar. 1, 2023) (citation omitted).   However, a municipality

cannot be held liable under § 1983 on a theory of *respondeat superior*.   *Id*.   Rather, a

municipality can be subjected to civil liability "only if the alleged constitutional violations

are 'directly attributable to the municipality through some sort of official action or

imprimatur; isolated unconstitutional actions by municipal employees will almost never

trigger liability.'"   *Robinson v. Hunt Cty., Tex.*, 921 F.3d 440, 449 (5th Cir. 2019) (citing

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).   "[M]unicipal liability

under section 1983 requires proof of three elements:  a policymaker; an official policy; and

a violation of constitutional rights whose 'moving force' is the policy or custom."

*Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).   These three principles "are

necessary to distinguish individual violations perpetrated by local government employees

from those that can be fairly identified as actions of the government itself."   *Id*.   "While an

unconstitutional official policy renders a municipality culpable under § 1983, even a

facially innocuous policy will support liability if it was promulgated with deliberate

indifference to the 'known or obvious consequences' that constitutional violations would

result.   *Id*. (citation omitted); *Balle v. Nueces Cty.*, 952 F.3d 552, 557-58 (5th Cir. 2017)

(citations omitted).   "Importantly, to adequately plead a policy or custom, the specific

policy must be identified; it may not be inferred 'merely because harm resulted from some

interaction with a governmental entity.'"   *Kibbey*, 2023 WL 2598666, at * 3 (citing *Ratliff*

*v. Aransas Cty.*, 948 F.3d 281, 285 (5th Cir. 2020) (To adequately plead a custom or policy, plaintiffs must do more than describe an incident giving rise to injury) (other citations omitted).

Plaintiffs allege all Defendants[5] "each owed Jason the affirmative duties of care and protection because he was involuntarily detained in response to his observed and documented mental health crisis.  During his time under the restraint of the Dewitt and Live Oak County Sheriff's Offices, Jason was restrained of his liberty and unable to provide for his basic human needs of medical care and reasonable safety.  The conduct of both Sheriff's Offices and their officials, as detailed above and below in this complaint, fell below the levels protected by the Fourth Amendment and the Due Process Clause." (D.E. 25, Page 22).  Plaintiffs additionally allege the "Fourteenth Amendment grants persons in custody a right not to have officials disregard excessive risks to their safety and not to have their serious medical needs met with deliberate indifference." (D.E. 25, Page 22).  In their Second Amended Complaint and in their Response, Plaintiffs assert all

---

[5]Plaintiffs also list as defendants Leo Trejo, Umamaheswara Maruvada, Linda Madrigal and the city of Three Rivers, Texas, in their complaint.  (D.E. 25, Page 22).  However, Plaintiffs neither list these persons or entity in either the section titled "Statement of Claims" or in the section titled "Defendants" nor do Plaintiffs include any factual allegations against them.  (D.E. 25, Page 2 and D.E. 25, Pages 4-9 and 9-21).  There are no allegations as to who these alleged defendants are and how they are involved in this action.  As to Trejo, Plaintiffs only state he is a "high-ranking policymaker" at Coastal Plains.  (D.E. 25, Page 8).  No other factual allegations are pleaded in the Second Amended Complaint.  Accordingly, as Plaintiffs have clearly failed to properly plead any claims against these individuals or entity above, the undersigned finds any claims are conclusory as they are made entirely without any factual support in the Second Amended Complaint. Therefore, the undersigned **RECOMMENDS** all claims against Trejo, Maruvada, Madrigal and Three Rivers should be dismissed.

8 / 47

Defendants failed to provide mental health treatment to Mr. Perez when in their custody despite his mental health issues and this violated his due process and equal protection rights as the Fourth Amendment "requires government actors to provide adequate medical care and this right is applicable to States and Municipalities through the Fourteenth Amendment." (D.E. 32, Page 4; D.E. 25, Pages 22-36).

Plaintiffs further allege all Defendants discriminated against Mr. Perez because of his known disabilities by denying "him the benefits of the services, programs and activities to which he was entitled as a person with a mental health disability, including but not limited to the right to be free of discriminatory or disparate treatment by virtue of his mental disability and addiction, and to due process of the law." (D.E. 25, Page 32). Plaintiffs also assert jail staff were inadequately trained and failed "to follow established policies, procedures, directives and instructions regarding crisis intervention techniques for individuals who exhibit the signs and symptoms of mental health disabilities" and failed to give Mr. Perez access to a mental health provider. (D.E. 25, Page 33-34). Plaintiffs allege jail staff in both counties "refused to offer Jason any mental health treatment." (D.E. 25, Page 36). Plaintiffs further assert Mr. Perez never received "the appropriate mental health evaluation he was owed due to both counties' decision to take him into custody." (D.E. 25, Pages 35-36).

A.    **DeWitt County Defendants**[6]

As discussed above, Mr. Perez was arrested in DeWitt County twice for public intoxication, the first time on November 16, 2020 and the second time on November 20, 2020.  He was last released from DeWitt County Jail on November 20, 2020, several weeks prior to his death on December 7, 2020.  For the reasons stated below, the undersigned recommends that all § 1983 claims be dismissed as stated against the DeWitt County Defendants.

In their Second Amended Complaint, Plaintiffs allege Defendant Sheriff Bowen, as a policymaker for DeWitt County, "failed to train his officers on recognizing individuals in a mental health crisis, and as a result of the deliberate indifference to the need for training" the arresting officer falsely arrested Mr. Perez for public intoxication when he "was not intoxicated" but having a "mental health crisis."  (D.E. 25, Page 10).  Plaintiffs assert that by failing to train his subordinates, Mr. Perez's "federally protected rights [were] violated."  (D.E. 25, Page 4).  Plaintiffs allege Mr. Perez was denied medical care, after giving consent to be treated at the time of his arrest.  (D.E. 25, Page 10).  Plaintiffs further allege Defendant Hernandez conducted and completed a medical form where "she

_____

[6]In this M & R, the undersigned has considered Plaintiffs' claims chronologically based on Mr. Perez's arrests in November in DeWitt County and then in December in Live Oak County. Therefore, the undersigned refers to Defendants DeWitt County, DeWitt County Sheriff Bowen, Guajardo, Hernandez, Torres, Gulf Bend and Tunnell collectively as the "Dewitt County Defendants," noting Defendants Gulf Bend and Tunnell have filed their own motion to dismiss. (D.E. 28 and D.E. 29).  Further, while the other Dewitt County Defendants and Defendants Coastal Plains and Carabajal have submitted a joint Motion to Dismiss, the undersigned addresses Coastal Plains and Carabajal's claims separately with the Live Oak County Defendants, as discussed below, as they are the medical health provider at Live Oak County Jail, not the Dewitt County Jail. (D.E. 27 and D.E. 29).

indifferently documented that Jason did not appear to be under the influence of drugs or alcohol, facts inconsistent with his arresting offense of public intoxication one hour prior. She also documented that he did not appear to need immediate psychiatric treatment…[using] the blanket answer of "NO" to all fields on the form." (D.E. 25, Pages 10-11). Plaintiffs also allege Defendant Hernandez and another officer noted one hour later on a "Screening for Suicide and Medical/Mental/Developmental Impairments Form" that "Jason appeared to possibly be under the influence of methamphetamine because of his obvious paranoia," recording that "he heard and responded to voices that were not there," had "unusual, strange, unfocused, and delusional" behavior and was "unable to focus his pupils." (D.E. 25, Page 11). Plaintiffs then allege Defendant Hernandez reported these observations to a magistrate judge, including that Mr. Perez was hearing voices, was worried a drug cartel was trying to hurt or kill him, was exhibiting strange behavior and was threatening to sue everyone. (D.E. 25, Pages 11-12). Plaintiffs then allege no other actions were taken to medically evaluate Mr. Perez, he was released and then arrested again three days later, on November 19, 2020, again for public intoxication. (D.E. 25, Pages 12 and 24). After his second arrest, Plaintiffs allege Defendants Hernandez, Guajardo and Torres "collectively answered 'NO' to all relevant mental health issues which [Mr. Perez] was still clearly exhibiting" and no referral was made to a magistrate judge before Mr. Perez was released on November 20, 2020. (D.E. 25, Page 12). Plaintiffs assert the DeWitt County Defendants "were indifferent towards processing his petitions for help while Jason was in their custody and totally denied him the help he needed." (D.E. 25, Page 13).

Plaintiffs further assert that the DeWitt County Defendants, given Mr. Perez's documented history of mental illness, should have followed "statutory provisions put in place to ensure that individuals already detained for severe and dangerous mental health issues receive a level of care and accommodation to protect their reasonable safety, meanwhile avoiding cruel and usual punishment." (D.E. 25, Page 23). Plaintiffs also assert the Dewitt County Defendants were deliberately indifferent to Mr. Perez's mental health crisis during both of his November arrests as he was never evaluated by a licensed physician while in DeWitt County custody and never appeared before the Dewitt County Magistrate Judge and instead "was allowed to simply walk out of the jail, having received no medical attention or evaluation despite such need being obvious." (D.E. 25, Page 24). Plaintiffs further assert Defendant Hernandez, Guajardo and Torres "acted as gatekeepers to more specialized care [and] [e]ach failed in the gatekeeper role by not making any referral for mental health screening or a mental health hold." (D.E 25, Page 26). Plaintiffs also assert "Defendant DeWitt County delegated its duty to provide medical treatment of all inmates at the DeWitt County Jail" to Gulf Bend. (D.E. 25, Page 34).[7] Plaintiffs assert the Dewitt County Defendants "violated his Constitutional and Statutory Rights not to have his health care needs met with deliberate indifference" and failed to follow certain state laws which

---

[7]In their Second Amended Complaint, Plaintiffs often plead DeWitt County Jail delegated medical care to Coastal Plains or assert Gulf Bend was responsible for medical care for Mr. Perez at Live Oak County Jail. However, these are clearly inadvertent errors as Gulf Bend is the health care provider for the DeWitt County Jail and Coastal Plains is the health care provider for Live Oak County Jail. (D.E. 25, Pages 8). Throughout the Second Amended Complaint, Plaintiffs make these errors, even repeatedly referring to a non-existent entity called "Gulf Coast." (D.E. 25, Page 36).

contain "procedures for intake screening to identify mental illness, adequately providing for supervision, and verifying medical needs." (D.E. 25, Pages 26 and 34). Plaintiffs further allege Mr. Perez "was effectively incapacitated and none of the jail staff…addressed the serious mental health need while Jason was in jail" and denied him transfer to a proper treatment facility. (D.E. 25, Pages 34-35 and 36).

### 1.    Standing

The Dewitt County Defendants argue dismissal of Plaintiffs' § 1983 claims is appropriate under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs, neither of whom have been named executor of Mr. Perez's estate, lack standing to assert a civil rights claim on behalf of another individual, citing to the Fifth Circuit Court of Appeals' decisions in *Barker v. Halliburton*, *Martinez v. Maverick County* and *Coon v. Ledbetter*. 645 F.3d 297, 300 (5th Cir. 2011) ("A third party may not assert a civil rights claim based on the civil rights violations of another individual.") (citation omitted); 507 F. App'x 446, 448 n.1 (5th Cir. 2013); and 780 F.2d 1158, 1160-61 (5th Cir. 1986); (D.E. 28, Page 3 and D.E. 29, Page 5).

Plaintiffs did not respond to this argument regarding standing other than to conclusory state "Rule 12(b)(1) is misapplied here," and then citing to case law regarding fact questions related to jurisdictional issues. (D.E. 32, Pages 16-17). In their Second Amended Complaint, Plaintiffs, who are Mr. Perez's mother and father, assert they are suing "both individually and as heirs and representatives of the Estate of Jason John Perez" and "as an heir-at-law to Jason John Perez's estate, and as a statutory beneficiary under the

Texas Wrongful Death Act pursuant to 1988."  (D.E. 25, Pages 1, 2 and 3-4).  Plaintiffs further assert Mr. Perez "died intestate, and there were no probate proceedings arising from his death, as none were necessary.  Should an Estate become necessary, Macias [Mr. Perez's father] will serve as a representative."  (D.E. 25, Page 3).

The Second Amended Complaint alleges violations of Mr. Perez's constitutional rights pursuant to section 1983, not the Plaintiffs' constitutional rights.  The undersigned recommends Mr. Perez's father and mother, individually and as heirs, do not have standing to bring such claims as "[a] person who claims a deprivation of constitutional rights must 'prove some violation of their personal rights.'"  *Landry v. Cypress Fairbanks ISD*, No. No. 4:17-cv-3004, 2018 WL 3436971, at *4 (S.D. Tex. July 17, 2018) (citing *Coon*, 780 F.2d at 1160)).  The Fifth Circuit does not recognize a claim by a family member under section 1983 for the death or injury of another allegedly caused by state action.  In other words, a section 1983 civil rights action is a personal suit; it does not accrue to a relative or bystander.  *Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011).  However, the undersigned recommends that at this stage, Plaintiff Macias has sufficiently pleaded that he is the representative of Mr. Perez's estate (D.E. 25, Page 3), if needed, to pursue any section 1983 claims contained in the Second Amended Complaint. *See Beary v. Harris Cnty.*, No. CV H-22-1249, 2023 WL 3311551, at *3 (S.D. Tex. Apr. 4, 2023) (Finding

parents of deceased had standing given there was no administration of the estate pending or necessary and Plaintiffs were the statutory beneficiaries). [8]

## 2.      Failure to State a Claim

The Dewitt County Defendants next assert "Plaintiffs' claims are that [the Dewitt County Defendants] negligently failed to incarcerate Perez," arguing there is no "constitutional violation as there is no constitutional right to be incarcerated."  (D.E. 29, Pages 3 and 6-7).  The undersigned believes this is a mischaracterization of Plaintiffs' claims.  Rather, the undersigned reads the Second Amended Complaint and Plaintiffs' Response to assert that Mr. Perez had a constitutional right to medical care, specifically mental health screenings and treatment, while incarcerated.

### a.      Claims against Guajardo, Hernandez, Torres and Tunnell in their individual capacities and Qualified Immunity

The DeWitt Defendants sued in their individual capacities contend they are entitled to dismissal on Plaintiffs' § 1983 claims on the basis of qualified immunity.  Government officials performing discretionary duties can respond to § 1983 claims by asserting qualified immunity.  *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (citing *Haverda*

---

[8]The undersigned notes the DeWitt County Defendants do not move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs claims asserted through 42 U.S.C. § 1988 based on Texas wrongful death and survival statues.  Pursuant to 42 U.S.C. § 1988, a party must have standing under the appropriate state common law to bring these claims under section 1983.  *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004) (The Texas Wrongful Death Statute provides a cause of action for the benefit of surviving parents, among others, deriving from injuries they suffered because of the decedent's death while the Texas Survival Statute provides a cause of action based on the injuries the decedent personally suffered and belongs to the estate itself); Tex. Civ. Prac. & Rem. Code §§ 71.004, 71.021.

*v. Hays Cty.*, 723 F.3d 586, 598 (5th Cir. 2013).   "Qualified immunity attaches when an

official's conduct 'does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017)

(quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).   Government officials are given

"breathing room to make reasonable but mistaken judgments" and "all but the plainly

incompetent or those who knowingly violate the law" are protected.   *Stanton v. Sims*, 571

U.S. 3, 6 (2013) (citations omitted).

A pretrial detainee's constitutional right to medical care, whether in prison or other

Once a defendant raises the defense of qualified immunity, the plaintiff bears the

burden of showing the defense does not apply.   *Brown v. Callahan*, 623 F.3d 249, 253 (5th

Cir. 2010).   To satisfy this burden, Plaintiff must show:   "(1) the official violated a statutory

or constitutional right, and (2) that the right was clearly established at the time of the

challenged conduct."   *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).   If either condition is

not met, the officers are immune.   *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020).

A pretrial detainee's constitutional right to medical care, whether in prison or other

custody, flows from the due process guarantees of the Fourteenth Amendment.   *Ross*, 2022

WL 992592, at *2 (citation omitted).   The Fourteenth Amendment guarantees arrestees the

right "not to have their serious medical needs met with deliberate indifference on the part

of the confining officials."   *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001)

(citations omitted); *Nerren v. Livingston Police Dep't*,, 86 F.3d 469, 473 (5th Cir. 1996)

("After the initial incidents of seizure have concluded and an individual is being detained

by police officials but has yet to be booked, an arrestee's right to medical attention, like

that of a pretrial detainee, derives from the Fourteenth Amendment.")  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Cladwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).  Deliberate indifference is an extremely high standard to meet as Plaintiffs must show the officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, that they actually drew the inference, and disregarded the risk by failing to take reasonable measure to abate it.  *Ross*, 2022 WL 992592, at *2 (citing *Baldwin*, 964 F.3d at 326); *Thompson*, 245 F.3d at 457 (Officers were deliberately indifferent as they were on notice they had "custody of a delusional detainee who was severely harming himself" by colliding with objects in his cell and did nothing to protect or help the detainee).  The Fifth Circuit has consistently held that "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson*, 245 F.3d at 459 (citing *Hare v. City of Corinth*, 74 F.3d 633, 638-39 (5th Cir. 1996) (Negligent conduct or inaction by an officer does not violate the due process rights of a person lawfully in custody); *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (A "mere disagreement with one's medical treatment is insufficient to show deliberate indifference."); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference.") (citations omitted).  "It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Texas Dep't of Criminal*

*Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted).  Rather, the plaintiff must show officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021).

Here, Plaintiffs have submitted very limited factual allegations against these individual Defendants, if any.   Rather, Plaintiffs include generalized, conclusory statements about Mr. Perez's overall lack of treatment while incarcerated, grouping claims against all defendants in their individual capacities without many, or any, factual allegations.  Specifically, Plaintiffs allege Mr. Perez was acting unfocused, strange and delusional during his first DeWitt County arrest and, presumably, his second arrest although this is not pleaded other than to state he was "clearly still exhibiting…mental health issues." (D.E. 25, Page 12).  Plaintiffs further allege he was initially screened after both DeWitt County public intoxication arrests by Defendant Hernandez and after the second arrest by Defendants Hernandez, Torres and Guajardo, although they allege these screenings and the response to Mr. Perez's behavior were deficient.  Plaintiffs do not allege with any specificity that Defendants Hernandez, Torres and Guajardo were otherwise informed of Mr. Perez's mental illness prior to his arrests.  Plaintiffs also allege Defendants Hernandez, Torres and Guajardo failed as "gatekeepers" by not referring Mr. Perez to more specialized care for mental health treatment or a mental health hold.  However, even if the screening steps were ineffectual and Mr. Perez's mental health ailments were not identified, recorded and treated, Plaintiffs' allegations do not demonstrate deliberate

indifference against these Defendants.  *McWilliams v. City of Houston*, No. 4:17-cv-345, 2021 WL 2445878, at *9 (S.D. Tex. June 15, 2021) (Officers who conducted an initial medical screening of pretrial detainee who, while appearing heavily intoxicated, did not have any "clear manifestation of medical distress" after cocaine ingestion, while possibly negligent or even grossly negligent for placing detainee in a cell with monitoring, were not deliberately indifferent).  "It is well established on this point that a passive failure to identify a serious medical need does not constitute deliberate indifference."  *Id*. (citing *Trevino v. Hinz*, 751 F. App'x 551, 554-55 (5th Cir. 2018) ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."); *Tamez v. Manthey*, 589 F.3d 764, 766 (5th Cir. 2009) (Fifth Circuit found no constitutional violation where officers determined an aggressive and combative detainee with pupil dilation did not require immediate attention after screening even though the detainee later died of a cocaine overdose); *Estate of Allison v. Wansley*, 524 F. App'x 963, 972 (5th Cir. 2013) (The Fifth Circuit held it was objectively reasonable for officers to let an intoxicated detainee who slurred her speech and appeared unbalanced to "sleep it off," so long as the detainee, who later died, was periodically monitored). Additionally, the Fifth Circuit has held "there is no independent constitutional right to mental-health screening."  *Crandel v. Hall*, 75 F.4th 537, 545-46 and 548 (5th Cir. 2023) (Even if Plaintiffs could assert a right to mental health screening, "evidence of inadequate screening…would not raise an issue of deliberate indifference without additional evidence that [the jailers] knew that [the detainee] was in fact at risk for suicide.") (citation omitted).

Plaintiffs plead Mr. Perez was arrested for being intoxicated in public although they assert his behavior should have instead been attributed to his mental health impairments. However, Plaintiffs do not plead that any defendant intentionally treated him incorrectly. Upon review of Mr. Perez's behavior while in the jail as pleaded, it could have just as well been explained by intoxication.  Plaintiffs do not plead that any of these Defendants knew that Mr. Perez had threatened to harm others or had engaged in destructive behavior prior to his arrests.  Further, Plaintiffs do not plead that Mr. Perez was harming himself or threatening to harm himself when he was arrested or while he was incarcerated at the DeWitt County Jail.  Additionally, Plaintiffs have not pleaded Mr. Perez was even injured while in custody.  In fact, Plaintiffs pleaded Mr. Perez was struck by a car and killed several weeks after his last detention in the DeWitt County Jail and after he had relocated to Live Oak County to live with his mother.  In short, the undersigned recommends Plaintiffs have failed to plead allegations which, if accepted as true, defeat these Defendants qualified immunity.

The undersigned also notes Plaintiffs have not alleged any facts in support of their claims against Defendant Tunnell individually or that he had any personal involvement in any of the acts or omissions alleged to have violated certain constitutional rights.  Rather, the only explanation as to why Defendant Tunnell is included in this action is that he is Gulf Bend's Chief Executive Officer.  *Luna v. Granados*, No. 6:21-cv-17, 2023 WL 6221785, at *11 (S.D. Tex. Sept. 24, 2023) ("Personal involvement is an essential element of a civil rights claim against a government official in his or her individual capacity.")

20 / 47

"There must be an affirmative link between the incident at issue and some act by the defendant," as "Fifth Circuit precedent makes clear that courts must 'examine each individual's entitlement to qualified immunity separately." *Id.* (citations omitted). To state a § 1983 claim against a defendant, a plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *Alerson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (Holding that under § 1983, officials are not vicariously liable for conduct of those under their supervision; they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations).

Plaintiffs have not alleged Tunnell was present at the DeWitt County Jail or gave direction of any kind to those who interacted with Mr. Perez. Therefore, Plaintiffs have not stated a plausible individual liability claim based on personal involvement. Similarly, Plaintiffs do not sufficiently allege Tunnell created, implemented or enforced policies that caused Mr. Perez injury. Plaintiffs assert, again improperly grouping Defendants together, that Tunnell was a policymaker who "failed to train, supervise, and discipline officers and subordinates on how to properly document and refer or treat detainees suffering from severe mental health crises" and had "training policies [that] were inadequate to ensure a detainee was properly evaluated and treated." (D.E. 25, Pages 29, 30 and 31). Plaintiffs further allege, still grouping Defendants together, that their "indifference towards those with mental health issues…led to the deterioration of Jason's mental state and eventual

death weeks later" and "caused these constitutional violations by reason of their deliberately indifferent practice and custom of failing to properly train, supervise and discipline correctional and investigative officers in detecting, reporting, and protecting mentally ill inmates from harm." (D.E. 25, Pages 30-32 and D.E. 28, Pages 4-5). However, in addition to failing to allege any facts showing Defendant Tunnell's personal involvement in Mr. Perez's care, Plaintiffs fail to identify or allege any facts related to any conduct, unconstitutional or otherwise, by any Gulf Bend employee. There are no factual allegations related to any Gulf Bend employee. Further, Plaintiffs do not plead that Gulf Bend or Tunnell was responsible for training or supervising any DeWitt County employees, including those named in the Second Amended Complaint.

Considering the Second Amended Complaint, Plaintiffs have failed to plead that any of the DeWitt County individual Defendants' conduct amounts to a constitutional violation. The Second Amended Complaint is lacking in specificity and particularity as to the conduct of each of the individual defendants and the facts they contend are insufficient to defeat assertions of qualified immunity. Accordingly, the undersigned recommends the claims against the DeWitt County Defendants in their individual capacities be dismissed.

     **b.**    **Claims against DeWitt County, DeWitt County Sheriff Bowen, Gulf Bend and Jeffrey Tunnell in his official capacity**[9]

---

[9]Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted). Plaintiffs sue Defendants Bowen and Tunnell in their official capacities, and therefore, this is effectively a suit against DeWitt County and Gulf Bend. *Id.*; *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the undersigned **RECOMMENDS** Plaintiffs' official capacity claims against Bowen and Tunnell be dismissed as redundant. *Ross v. City of Dallas*, No. 3:20-cv-1690-E, 2022 WL 992593, at *6 (N.D. Tex. Mar. 31, 2022) (citations omitted). Accordingly, the undersigned need

To prevail on a municipal liability claim under § 1983, Plaintiffs must establish a policy maker, an official policy, and, important here, a violation of a constitutional right whose moving force is the policy or custom. *Piotrowski*, 237 F.3d at 578. Because the undersigned has recommended that Plaintiffs have not pleaded facts establishing that any of the DeWitt County jail employees acted with deliberate indifference, there is no underlying constitutional violation and therefore, no custom or policy associated with such a violation. *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) ("As is well established, every *Monell* claim requires an underlying constitutional violation."); *Hines v. Henson*, 293 F. App'x 261, 263 (5th Cir. 2008) ("A fundamental requirement for any § 1983 claim is the existence of a constitutional violation.") (citation omitted). Accordingly, the Second Amended Complaint falls short of stating any *Monell* claim against DeWitt County or Gulf Bend. *Id.* ("Because we find that Hines has not succeeded in establishing deliberate indifference by the county jail officials, we conclude that there is no constitutional violation under the facts of this case," dismissing Hines' municipal liability claim under § 1983). Therefore, the undersigned recommends these claims be dismissed.

---

not consider Sheriff Bowen's argument that he was improperly served as he is sued only in his official capacity and the undersigned recommends the claims against him be dismissed. (D.E. 25, Page 4 and D.E. 29, Pages 4 and 20-21).

B.     **Live Oak Defendants**[10]

In early December 2020, shortly after Mr. Perez relocated from DeWitt County to Live Oak County to live with his mother, he was arrested for making terrorist threats to his mother, spending five days in jail on a medical hold.  (D.E. 25, Page 13).  He was then released from Live Oak County Jail and, after filing a missing person's report, his mother and her bail bondsman located Mr. Perez at a truck stop in an altered mental state and walking in the cold rain with no coat.  (D.E. 25, Page 14).  On December 5, 2020, Plaintiff Perez called 911 because her son broke a window and became increasingly confrontational with her.  (D.E. 25, Page 14).  While police responded, Mr. Perez was not arrested as he denied breaking the window and no one saw him do it.  (D.E. 25, Page 14).  The responding officer, Andy Flores, made a referral for mental health assistance after noting Mr. Perez's delusions and paranoia.  (D.E. 25, Pages 14-15).  On December 7, 2020, Mr. Perez was again arrested and incarcerated in the Live Oak County Jail on an emergency detention warrant after his mother called 911 reporting his erratic and threatening behavior, including cutting off the power, kicking out water pipes in the kitchen, breaking mirrors in the living room and tearing down drapes to build a fortress.  (D.E. 25, Pages 15-16).  Mr. Perez was not at his mother's residence when officers arrived and was later located walking along a highway, where he was arrested without resistance.  (D.E. 25, Page 16).  The arresting

---

[10]The undersigned refers to Defendants Live Oak County, Live Oak County Sheriff Busby, Perry, Vasquez, Coastal Plains and Carabajal collectively as the "Live Oak County Defendants," noting Defendants Coastal Plains and Carabajal have filed a motion to dismiss collectively with the DeWitt County Defendants. (D.E. 27 and D.E. 29).

officer who was transporting Mr. Perez after his arrest, Officer Tadlock, noted Mr. Perez

was making delusional statements and needed mental health services.  (D.E. 25, Page 16).

As Mr. Perez was being transported to the Live Oak County Jail, Deputy Flores completed

a "Notice of Emergency Detention" form stating he believed Mr. Perez had been

experiencing a mental health crisis for several weeks, possibly suffering from

schizophrenia, detailing Mr. Perez's hallucinations as well as his threatening and

destructive behavior.  (D.E. 25, Pages 16-17).   Deputy Flores further noted an adult

protective services caseworker had recently been assigned to assist Mr. Perez, requesting

a mental health care provider speak with him for more information before or after screening

Mr. Perez.  (D.E. 25, Page 17).[11]   After Mr. Perez arrived at the Live Oak County Jail, "a

series of intake documentation was conducted."  (D.E. 25, Page 18).  Plaintiffs allege the

medical screening form "did not indicate the fullness of Jason's obvious serious medical

needs by not marking that he was delusional, paranoid, confused, and hallucinating" as

Officer Tadlock "only circled 'mentally ill.'"  (D.E. 25, Page 18).  Plaintiffs further allege

on the "Screening for Suicide and Medical/Mental/Dev. Impairments" form, "Corporal A.

Perry and Supervisor Analicia Vasquez failed to include the most relevant symptoms and

---

[11]In the Second Amended Complaint, Plaintiffs allege Deputy Flores, after arriving at the jail and filling out the emergency detention paperwork, "later commented[:]" "it was clear that Jason posed a threat to others due to his altered mental state and warped sense of reality.  I believe Jason requires immediate mental health intervention as his delusional and perception of the world that exists to him now led him to a new dangerous level of paranoia and frustration which caused him to begin destroying property.  I felt Jason would benefit from MHMR intervention as he displayed signs of violence due to his altered mental state.  I also asked the LOCSO jail to give my number to MHMR before or after they'd spoken with Jason to give them more info."  (D.E. 25, Pages 16-17).  However, Plaintiffs do not plead where this statement was made, when it was made and to whom.

issues suffered by Jason" and indicated "No" "on fields asking if Jason was worried that someone was trying to hurt him and if he was showing signs of mental illness." (D.E. 25, Page 18). This information was then "indifferently forwarded to the Magistrate, mental health, and medical health care providers." (D.E. 25, Page 19). Defendant Perry also completed an "Inmate Mental Condition Report to Magistrate" form but there is no documentation this form was reviewed by the Magistrate and Defendant Perry did not check the box that Mr. Perez was violent and a danger to himself or others. (D.E. 25, Page 19). Plaintiffs allege Defendant Carabajal, screening Mr. Perez over the phone, completed the Coastal Plains MHMR assessment, determining Mr. Perez did not need "further in-patient treatment," although she "was aware of Jason's need of medical care for his mental health crisis…[and] aware that Officer Flores wanted to share critical information about Jason's mental status." (D.E. 25, Pages 19-20). Defendant Carabajal documented Mr. Perez's symptoms, marking "mania" and "mood swings" as current symptoms but did not note hallucinations, paranoia, delusions and anxiety. (D.E. 25, Page 20). Mr. Perez was then later released the same day from Live Oak County Jail on December 7, 2020. Plaintiffs allege that after he was released, Mr. Perez "began to wander aimlessly around the town until a patrol officer mistook [him] for someone else and gave him a ride to the Dairy Queen in Three Rivers." (D.E. 25, Page 21). At 9:40 p.m., Mr. Perez "was struck by an on-coming minivan driving between 65-70 miles per hour as he walked in the middle of the lane of oncoming traffic" and he died on the scene. (D.E. 25, Page 21).

Like the DeWitt County Defendants, the Live Oak County Defendants also argue there is no constitutional right to be incarcerated, and therefore, Plaintiffs' § 1983 claims should be dismissed.   However, as stated previously, the undersigned characterizes Plaintiffs' claims as asserting a constitutional right to medical care, specifically mental health screenings and mental health treatment, while incarcerated.

Also similarly, the individual Live Oak Defendants Perry, Vasquez and Carabajal also assert they are entitled to qualified immunity.  (D.E. 27, Pages 6-7[12] and D.E. 29, Pages 8-10).  However, unlike the allegations against the DeWitt County Defendants, Plaintiffs detail Mr. Perez's destructive and threatening behavior which was reported to and/or observed by several Live Oak law enforcement officers on multiple occasions prior to Mr. Perez's arrest on an emergency detention warrant.  Plaintiffs allege "at least four Live Oak County Sheriffs became subjectively aware of Jason's extreme mental health crisis and encouraged the warrantless detention…[and] Live Oak County jail staff was indifferent in completing his intake documentation."  (D.E. 25, Pages 27-28).  Specifically, Defendants Perry and Vasquez "breached their duties owed to Jason by disregarding their knowledge and observation of Jason's mental health crisis by providing blanket answers of "NO," and failing to document obvious symptoms on relevant mental health screening forms."  (D.E.

---

[12]While Defendants Sheriff Busby, Perry and Vasquez assert they are entitled to immunity on claims asserted against them individually and in their official capacities, the undersigned notes that in the Second Amended Complaint, Sheriff Busby is sued only in his official capacity and Perry and Vasquez only in their individual capacities.  (D.E. 25, Pages 6-7 and D.E. 27, Pages 6-7).  Defendant Carabajal is being sued in both capacities.  (D.E. 25, Page 8).  Qualified immunity only bars liability for claims against officials in their individual-not official-capacities.  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010).

25, Page 28).  Plaintiffs further allege Defendant Carabajal "intentionally ignored all of the information she was given regarding the severity of Jason's crisis and even openly contradicted her own findings in deciding that Jason did not meet the criteria for access to further mental health treatment…[when she] documented that Jason was not exhibiting bizarre behavior, hallucination, paranoia, delusions or anxiety."  (D.E. 25, Pages 28-29). Mr. Perez had a clearly established right not to have his serious medical needs met with deliberate indifference on the part of confining officials.  *Thompson*, 245 F.3d at 457.  If true, the fast as pleaded as discussed above against Perry, Vasquez and Carabajal, could demonstrate that they engaged in conduct "evinc[ing] a wanton disregard for" Mr. Perez's serious medical needs.  *Kelson*, 1 F.4th at 417.   As pleaded in the Second Amended Complaint, Deputy Flores, when Mr. Perez was arrested, reported Mr. Perez's serious mental health issues occurring for several weeks, including his threatening and destructive behavior, and his need for immediate mental health treatment.   Officer Tadlock also reported Mr. Perez was "mentally ill." (D.E. 25, Page 18).  In addition to this showing that Perry, Vasquez and Carabajal were aware of Mr. Perez's mental health issues, this is also sufficient to establish for purposes of the pending Motions that Mr. Perez's "need [was] so apparent that even laymen [in this case Deputy Flores and Officer Tadlock] would recognize that care is required." *Gobert*, 463 F.3d at 345 n. 12.  Further, unlike in DeWitt County where Mr. Perez was arrested for public intoxication, Mr. Perez was arrested in Live Oak County on an emergency detention warrant because he had engaged in destructive and threatening behavior and was likely to harm himself or others.  Also,

Deputy Flores, in addition to reporting Mr. Perez's mental issues and behaviors immediately preceding his arrest, requested to speak with the mental health provider before or after Mr. Perez was screened.  Further, Mr. Perez was killed within hours of being released after walking into oncoming traffic after receiving no mental health treatment. The undersigned recommends these allegations are sufficient to defeat the defense of qualified immunity at this stage.

The undersigned next considers Plaintiffs' § 1983 claims against Live Oak County and Coastal Plains.[13]  Unlike Plaintiffs' § 1983 claims against DeWitt County and Gulf Bend, the undersigned has recommended that Plaintiffs have pleaded facts which may establish that Perry, Vasquez and Carabajal acted with deliberate indifference to Mr. Perez's serious medical needs.  Accordingly, the undersigned must next consider whether Plaintiffs have sufficiently pleaded a *Monell* claim against Live Oak County and/or Coastal Plains, specifically a policymaker, an official policy or custom and a violation of constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 578.

In their Second Amended Complaint, Plaintiffs allege Defendant Sheriff Busby, as a policymaker for Live Oak County, is "responsible for not only training his officers on the street but also in the jail.  His officers on the street were trained to identify and adequately

---

[13]Like Plaintiffs' claims against Sheriff Bowen and Tunnell in their official capacities, the undersigned recommends Plaintiffs' claims against Sheriff Busby and Carabajal in their official capacities be dismissed as redundant as Plaintiffs have asserted the same claims against Live Oak County and Coastal Plains.  *Ross*, 2022 WL 99 2593, at *6 (Claims against individuals in their official capacities are effectively a suit against the entity of which the officer is an agent and should be dismissed); *Goodman*, 571 F.3d at 395.

respond to a person with a disability…[he] failed to train his jailers and failed to supervise those whom he delegates his subordinates on to identify the serious medical and mental health needs of detainees, and as a result of the failure to train his subordinates, it was the moving force behind Jason's federally protected rights being violated." (D.E. 25, Page 7). Plaintiffs allege a failure to properly train regarding crisis intervention techniques for individuals who exhibit the signs and symptoms of mental disabilities and to respond to emergencies involving persons with mental health disabilities as well as a failure to follow to established policies when dealing with those persons who exhibit the signs and symptoms of mental health disabilities. (D.E. 25, Pages 33-35). Plaintiffs also allege Defendants Live Oak County, Sheriff Busby and Coastal Plains "all failed to care for and protect Jason while he was in Live Oak County custody by way of their failure to train, supervise, and discipline officers and subordinates on how to properly document and refer or treat detainees suffering from severe mental health crises" and "caused these constitutional violations by reason of their deliberately indifferent practice and custom of failing to properly train, supervise and discipline correctional and investigative officers in the detecting, reporting, and protecting mentally ill inmates from harm." (D.E. 25, Pages 30-32). Plaintiffs assert the "pervasive nature of inconsistent documentation by Live Oak County officials indicates a culture and policy of deliberate indifference toward [those] suffering from mental health issues." (D.E. 25, Page 31). Additionally, Plaintiffs allege Defendants Live Oak County, Sheriff Busby, and Coastal Plains "each had the authority to use a mental health warrant to ensure Jason received the mental health care he needed and

was safe to be released." (D.E. 25, Page 36). Further, Plaintiffs allege that "since 2000 [t]he Coastal Plains Community catchment area [including Live Oak County] experienced the largest increase in the suicide death rate with an increase of 127.3 percent, thereby putting them on notice of the need to address and improve their response to serious mental health issues that could foreseeably lead to death." (D.E. 25, Page 31). The Second Amended Complaint does not assert an official policy. Rather, it is clear Plaintiffs assert both a customary policy and a failure to train, supervise and discipline.

In the absence of an official policy, Plaintiffs may establish the existence of a custom by demonstrating a persistent and widespread practice that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (citations omitted). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.*; *Ratliff*, 948 F.3d at 285 (Simply pleading that a practice "is so common and well settled as to constitute a custom" will not suffice without specific facts in support).

Here, Plaintiffs argue Live Oak County has the unofficial custom of failing to care for and protect mentally ill inmates in the Live Oak County Jail as Live Oak County Jail and Coastal Plains staff were not trained on how to properly refer or treat individuals suffering from mental illnesses. In support, Plaintiffs pleaded Live Oak County officials failed to properly document Mr. Perez's previous arrest, failed to properly document Mr. Perez's mental health issues and failed to properly refer Mr. Perez to mental health services

with all relevant information.  Even after accepting Plaintiffs' allegations against Live Oak County as true, the undersigned recommends they are so conclusory that Live Oak County and Coastal Plains' culpability cannot be proven.  While Plaintiffs allege there has been a "large[] increase in the suicide death rate…[in] the Coastal Plains Community catchment area," Plaintiffs fail to provide any details as to where this information was obtained, who conducted the study, how the figures were calculated and where or if it was published.  Plaintiffs also fail to plead statistics specific to Live Oak County.  Additionally, Plaintiffs do not identify any other similar incidents of alleged failure to properly document and treat mentally ill inmates at the Live Oak County jail.  In short, the undersigned recommends Plaintiffs cannot carry their burden to establish municipal liability solely by detailing the events surrounding Mr. Perez's arrests.  *Pena v. City of Rio Grande City*, 879 F.3d 613, 622-23 (5th Cir. 2018) (The Fifth Circuit held plaintiffs had not sufficiently pleaded a *Monell* claim where the only specific allegations related to an isolated interaction involving the plaintiff).  To "plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury."  *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  The undersigned recommends Plaintiffs' allegations are conclusory and insufficient to establish a widespread practice under *Monell*.

The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that

is action under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (citation omitted).  Therefore, to prevail under a failure to train theory, Plaintiffs must plead facts establishing (1) Live Oak's training procedures were inadequate; (2) Live Oak was deliberately indifferent in adopting its training policy; and (2) the inadequate training policy caused the violations in question.  *Ratliff*, 948 F.3d at 285.  It is not sufficient to show that an injury or accident could have been avoided if the employee had better or more training.  *Canton*, 489 U.S. at 391.  Similarly, when a municipality's alleged failure to supervise and/or discipline is at issue, the complaint must allege facts plausibly establishing that: (1) the supervisor either failed to supervise or discipline the subordinate; (2) a causal link exists between the failure to supervise or discipline and the violation of the plaintiff's rights; and (3) the failure to supervise or discipline amounts to deliberate indifference.  *See Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted); *Pena*, 879 F.3d at 623.  While Plaintiffs' complaint identifies multiple alleged inadequacies in the reporting and treatment of Mr. Perez's mental illness during his arrests and detention, the "standard for [municipal] fault" is a "stringent" one, requiring allegations of "[a] pattern of similar constitutional violations by untrained employees" to show deliberate indifference. *Pena*, 879 F.3d at 623 (citing *Connick*, 563 U.S. at 62); *Ratliff*, 948 F.3d at 285 (To establish a pattern of unconstitutional conduct constituting customary policy, the complaint must detail prior incidents beyond those events giving rise to the action).  "To establish deliberate indifference, 'a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a

constitutional violation.'"   *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted).   As discussed above, Plaintiffs have not sufficiently pleaded such a pattern of similar violations and their allegations are vague and conclusory.   Rather, Plaintiffs assert some violations occurred or must have existed and these must have been due to a failure to train, supervise or discipline, which is insufficient to carry their burden of showing deliberate indifference.   *Id.*   Plaintiffs have no specific allegations in the Second Amended Complaint about what training is provided by Live Oak County and/or Coastal Plains, how it is inadequate, what additional training should be required, how supervision or discipline is inadequate or how Live Oak County and/or Coastal Plains were deliberately indifferent in adopting or developing its training, supervision and discipline procedures. Additionally, while Plaintiffs argue in their Response that a single incident can demonstrate deliberate indifference, the undersigned recommends Plaintiffs' allegations do not establish this narrow exception.   *Id.*; *La. Div. Sons of Confederate Veterans v. City of Natchitoches*, 821 F. App'x 317, 320 (5th Cir. 2020) ("Although a policymaker's single decision may be in effect a policy that creates liability for a municipality, the situations to which this exception applies are few and will create 'municipal liability only if the municipal actor is a final policymaker.'") (citation omitted); *Chavez v. Alvarado*, 550 F.Supp.3d 439, 459 (S.D. Tex. 2021) ("The single-incident exception is generally reserved for those egregious cases in which the state actor was provided no training whatsoever" and "to rely on the exception a plaintiff must prove that a highly predictable consequence

of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation.") (citations omitted).

Accordingly, the undersigned recommends Plaintiffs have failed to state a claim for liability under § 1983 against either Live Oak County or Coastal Plains as discussed above.

## C.    CONCLUSION REGARDING § 1983 CLAIMS

For the reasons stated above, the undersigned recommends Plaintiff Macias, on behalf of the estate of Mr. Perez, has stated a plausible § 1983 claim against Defendants Perry, Vasquez and Carabajal in their individual capacities.  The undersigned recommends all other § 1983 claims, as discussed above, be dismissed.

## V.    ADA and RA Claims

Plaintiffs assert Defendants DeWitt County, Live Oak County, Gulf Bend and Coastal Plains are liable for discriminating against Mr. Perez based on his disability, specifically his mental health ailments.[14]  The ADA and the RA prohibit discrimination against qualified individuals with disabilities, but the statues govern different entities:  the ADA applies to public entities and private employers whereas the RA prohibits discrimination in federal agencies and federally-funded programs and activities.  Both "are judged under the same legal standards, and the same remedies are available under both Acts."  *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010).  To prevail on an ADA

---

[14]While not pleaded in this section, in the facts section of the Second Amended Complaint, Plaintiffs assert Mr. Perez was diagnosed in middle school with ADHD, bipolar disorder and depression and was also diagnosed in 2014 with bipolar disorder, paranoid schizophrenia and depression.  (D.E. 25, Page 9).

and/or RA claim, Plaintiffs must establish that (1) Mr. Perez was disabled within the meaning of the Act; (2) he was excluded from participation in, or was denied benefits of, services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was because of his disability.  *Id.*; *Smith v. Bexar Cty.*, No. SA-23-CV-623-JKP, 2023 WL 7289398, at *7 (W. D. Tex. Nov. 2, 2023).  A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such an individual."  *Id.* (quoting 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A).  Major life activities include, in relevant part, "caring for oneself."  42 U.S.C. § 12102(2)(A).  Further, to recover monetary damages, Plaintiffs must also show the discrimination was intentional.  *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

In the Second Amended Complaint, Plaintiffs assert Mr. Perez was unable to care for himself or to perform major life activities because of his obvious mental health impairment, which was a qualified disability.  (D.E. 25, Pages 37 and 39).  Plaintiffs also assert Mr. Perez "was arrested twice in Dewitt County due to the misperception that his mental illness was criminal activity, specifically public intoxication.  Furthermore, Dewitt County failed to reasonably accommodate Jason's disability during the investigation or arrest."  (D.E. 25, Page 37).  Plaintiffs further allege they made both the Live Oak County and DeWitt County Jails "aware of Jason's disability" and "aware that Jason was in need of mental help, but they ignored Jason's serious medical need and refused to provide Jason

with medical care for his mental health needs." (D.E. 25, Pages 37 and 38). Additionally, Plaintiffs plead Mr. Perez "was treated differently from others in the jail with other medical needs because his serious medical need was mental in nature and not physical" and both jails failed to accommodate him because they denied him medical care while in custody and failed to secure a mental health warrant. (D.E. 25, Pages 37-39). Plaintiffs further allege Mr. Perez was released from Live Oak County while in an "alternated mental state…and in need of serious medical care" and "[h]e was not transported to a hospital" and he was not provided with "safe transport home [and] as a direct result of these actions Jason was killed." (D.E. 25, Page 39). In their Response, Plaintiffs argue "Live Oak County violated Jason's right under the ADA by failing to reasonably accommodate Jason by improperly documenting the extent and severity of his psychotic delusions, despite having direct knowledge of such; and this was a major contributing factor to Mr. Perez's denial of treatment (benefits) which he was entitled to." (D.E. 32, Page 44).

The undersigned recommends Plaintiffs' allegations, accepted as true, fail to state either an ADA or an RA claim. As with their § 1983 claims, Plaintiffs again assert Mr. Perez was denied medical treatment for his mental health impairments. However, they fail to provide any specific facts as to how the prison and/or medical staff's actions were motivated by Mr. Perez's mental health impairments. Instead, the Second Amended Complaint centers on the denial of medical treatment and "neither the ADA nor RA covers the mere absence or inadequacy of medical treatment for a prisoner." *Payne v. Sutterfield*, No. 2:18-cv-84-Z-BR, 2021 WL 3173902, at *2 (N.D. Tex. July 27, 2021) (citations

omitted); *Nottingham*, 499 F. App'x at 377 ("There is no indication that [plaintiff] was treated differently because of his disability…[and therefore] he has not established a claim under the ADA."); *Hale v Harrison Cty. Bd. of Supervisors*, 8 F.4th 399, 404 n. 1 (5th Cir. 2021) ("The ADA is not violated by a prison's [staff] simply failing to attend to the medical needs of its disabled prisoners" because "[t]he ADA does not set out a standard of care for medical treatment) (citations omitted); *Whetstone v. Hall*, No. 4:17-cv-158-JMV, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018) ("The ADA and RA exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability.") (citation omitted); *Walls v. Tex. Dep't of Crim. Just.*, 270 F. App'x 358, 359 (5th Cir. 2008) (Noting plaintiff's ADA claim was properly dismissed because it simply restated plaintiff's denial of medical care claim); *Cadena v. El Paso Cty.*, 946 F.3d 717, 726 (5th Cir. 2020) ("[T]he ADA does not typically provide a remedy for negligent medical treatment.")

Here, the undersigned recommends Plaintiffs' claim is properly construed as one for denial of medical care, as previously discussed.   Therefore, the undersigned recommends Plaintiffs' ADA and RA claims against Defendants DeWitt County, Live Oak County, Gulf Bend and Coastal Plains be dismissed.

## VI.   Plaintiffs' State Law Claims for Wrongful Death and pursuant to 42 U.S.C. § 1988[15]

Plaintiffs' complaint could be construed as raising wrongful death claims under state law and through 42 U.S.C. § 1988.  Both counts III and VI raise complaints for wrongful death.  It is not clear to the undersigned why Plaintiffs raised these claims in separate counts.  However, in their response to Defendants' Motions to Dismiss, Plaintiffs assert their wrongful death and survival claims are not brought under state law but rather pursuant to 42 U.S.C. § 1988.  (D.E. 32, Page 52).  The undersigned will therefore only address these claims under 42 U.S.C. § 1988 and accepts Plaintiffs' representation they are not raising state law claims.

Section 1983 does not specifically address every action and remedy that may be brought and recovered under it.  *Mathis v. Sw. Corr., LLC*, No. 5:20CV146-RWS-CMC, 2021 WL 5088276, at *6 (E.D. Tex. June 15, 2021), report and recommendation adopted, No. 5:20CV146-RWS-CMC, 2021 WL 4129123 (E.D. Tex. Sept. 10, 2021).  Section 1988 of Title 42 of the United States Code addresses those situations.  *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978).  "This statute recognizes that in certain areas 'federal law is unsuited or insufficient 'to furnish suitable remedies;' federal law simply does not 'cover

---

[15]In paragraph 142 under the heading Wrongful Death and Survival Claims and after a blank paragraph listed as 141, Plaintiffs pleaded: "In the alternative to the constitutional claims, Plaintiff asserts ***medical negligence, Chapter 74 Health Care Liability*** claims against Defendant Carabajal, Gulf Bend, Coastal Plains and Patricia Carabajal [sic]."  (D.E. 25, Page 41) (emphasis added).  No other allegations, legal or factual, are pleaded in support of Plaintiffs' medical negligence claims. Plaintiffs have failed to properly plead medical negligence claims with any facts. The undersigned declines to address this claim further other than to recommend it be dismissed as insufficiently pleaded under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a plausible claim.

every issue that may arise in the context of a federal civil rights action.'" *Wegmann*, 436 U.S. at 588 (Quoting *Moor v. County of Alameda*, 411 U.S. 693, 703 (1973)).  In these situations, 42 U.S.C. § 1988 allows federal courts to borrow an appropriate rule from the forum state court.  *Mathis*, 2021 WL 5088276, at *6.  State common law is used to fill gaps in the administration of the federal civil rights statutes.  *Turk v. Mangum*, 268 F. Supp. 3d 928, 931 (S.D. Tex. 2017).  Section 1983 claims brought in connection with the wrongful death of a person are such claims.  The Fifth Circuit has recognized that surviving family members may seek remedies in Section 1983 cases involving death so long as such remedies are available under the applicable state's wrongful death laws.  *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 209 (5th Cir. 2016); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).  Section 1988 of Title 42 incorporates Texas wrongful death remedy into § 1983. *Rhyne v. Henderson Cty.,* 973 F.2d 386, 391 (5th Cir. 1992).

Texas' wrongful death statute provides, "A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." TEX. CIV. PRAC. & REM. CODE § 71.002(b).  "An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased."  *Id.* § 71.004(b).  Therefore, to recover wrongful damages claims under Sections 1983 and 1988, the representatives of the deceased's estate must allege a causal link between the Defendants' unconstitutional acts or omissions and Jason Perez's death,

as required by the state's wrongful death statute.  *Montano v. Orange Cty., Tex.*, 842 F.3d 865, 882 (5th Cir. 2016) (citing *Phillips ex rel. Phillips v. Monroe Cty., Miss.*, 311 F.3d 369, 374 (5th Cir. 2002)).   Plaintiffs can satisfy causation by demonstrating that Defendants' acts or omissions were a "substantial factor in bringing about [Mr. Perez's death] and without which [his death] would not have occurred." *Montano*, 842 F.3d at 882 (citing *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995)).

As set forth above, Plaintiff Macias in his capacity as administrator of the estate of Jason Perez has stated viable 1983 claims against Defendants Analicia Perry, Analicia Vasquez and Patricia Carabajal.[16]  As set forth above, the undersigned has recommended that Plaintiffs have stated 1983 claims against these defendants.[17]  Plaintiffs allege facts that indicate Perry and Vasquez were correctional officers in the Live Oak County jail and were responsible for screening, documenting and processing Mr. Perez during his intake into the jail.  Patricia Carabajal is alleged to have been responsible for conducting the mental health screening of Mr. Perez.  Plaintiffs have alleged facts to indicate these defendants were aware of Mr. Perez's ongoing mental health crisis and were aware of his being delusional and a danger to himself and others.  Despite this knowledge, these defendants failed to correctly document Mr. Perez's severe mental health/medical

---

[16] Plaintiffs' claims brought against Defendants Perry, Vasquez and Carabajal in their individual capacities under Section 1983 and 1988 are not subject to dismissal under either the Texas Tort Claims Act or the doctrine of sovereign immunity. *Chavez v. Alvarado*, 550 F.Supp.3d 439, 451 (S.D. Tex. 2021) (citations omitted).

[17] Again, the undersigned recognizes that Defendants Analicia Perry and Analicia Vasquez may be the same person.  However, fact disputes are not resolved at this stage and the undersigned has considered the facts as set forth in Plaintiffs' Second Amended Complaint.

condition and further failed to take steps to refer Mr. Perez to an appropriate care provider. This is not dissimilar from a correctional officer not providing medical care to an inmate who had collapsed with a heart attack and then immediately discharging the inmate to die on the street without appropriate care.

Whether Defendants Perry, Vasquez and Carabajal are liable for the wrongful death of Mr. Perez will depend in part on whether Plaintiffs can prove a causal link between their conduct and Mr. Perez's death. At this stage of the proceedings, the issue for the Court is whether Plaintiffs have pleaded a plausible claim. The undersigned finds, for the limited purposes of addressing the Defendants' Motions to Dismiss, that the acts and omissions of Defendants Perry, Vasquez and Carabajal as alleged by Plaintiffs were a "substantial factor in bringing about [Mr. Perez's death] and without which [his death] would not have occurred." *Montano*, 842 F.3d at 882. Therefore, the undersigned respectfully recommends Defendants' Motions to Dismiss (D.E. 27 and D.E. 29) the §1983 and §1988 wrongful death and survival claims brought against Defendants Perry, Vasquez and Carabajal in their individual capacities be denied.

The undersigned has previously recommended that all of Plaintiffs' claims against the remaining defendants be dismissed because Plaintiff has failed to allege a viable claim against these defendants. Because Plaintiffs have not stated a viable §1983 claim against other defendants or against Perry, Vasquez, or Carabajal in their official capacities, their 1988 wrongful death claims also fail and should be dismissed.

Therefore, the undersigned recommends the pending Motions to Dismiss be denied as to the §1983 and §1988 wrongful death and survival remedies against Defendants Perry, Vasquez and Carabajal and granted as to the other defendants.

## VII. Loss of Consortium and Interference with Familial Relationships Claims under the First and Fourteenth Amendments

In Plaintiffs' Count V, they seek loss of consortium and interference with family relationships under the First and Fourteenth Amendments.  (D.E. 25, Page 40).  Plaintiffs do not plead this section of their complaint clearly and they fail to address the requested dismissal of these claims in their Response.  (D.E. 32).  However, the undersigned reads this section of Plaintiffs' complaint to be a claim for damages rather than separate causes of action.  As set forth in the section above, the undersigned does not recommend the dismissal of Plaintiffs' wrongful death and survival claims against Defendants Perry, Vasquez and Carabajal.  Therefore, the undersigned does not, at this time, recommend the dismissal of Plaintiffs' claims seeking damages for loss of consortium or interference with family relationships in connection with the wrongful death and survival claims.

## VIII. NO FURTHER AMENDMENT SHOULD BE ALLOWED TO CURE DEFECTS IDENTIFIED IN THE PENDING MOTIONS TO DISMISS

This case was originally filed in the 24th Judicial District of DeWitt County, Texas and was removed to this Court on February 3, 2023.  (D.E. 1).  Defendants filed their first motions to dismiss on April 25, 2023 and May 2, 2023.  (D.E. 11 and D.E. 12).  The initial scheduling conference was held before United States District Judge Nelva Gonzales Ramos on May 4, 2023.  During this conference, Judge Ramos discussed the motions to dismiss, mistakes in the pleading, that not all of the defendants had been served or filed a responsive

pleading and Plaintiffs' request to file an amended complaint.  Counsel for Plaintiffs argued she has a right to file an amended complaint to address the matters raised in the motions to dismiss.  Plaintiffs' counsel further argued she should have an opportunity to replead after all of the Defendants had filed their motions to dismiss.  Judge Ramos granted Plaintiffs' request to file an amended complaint but indicated she was not inclined to allow Plaintiffs multiple opportunities to re-plead their case.  Judge Ramos ordered that Plaintiffs' amended complaint be filed on or before June 5, 2023.  Plaintiffs filed their First Amended Complaint on June 6, 2023.  (D.E. 14).  On July 5, 2023, all defendants filed motions to dismiss, some of them for the second time.  (D.E. 19, D.E. 20 and D.E. 21).  On July 6, 2023, this case was referred to the undersigned magistrate judge.  (D.E. 22).

On July 18, 2023, the undersigned held a status conference to discuss the pending motions to dismiss.  The undersigned specifically instructed the parties:

> Plaintiffs have been allowed to amend once and many times in these types of cases there are motions to dismiss, followed by either a recommendation from a magistrate judge or a ruling for a district judge and then there is a request to cure the errors by filing a second, or third, or fourth amended complaint.  I can't make a ruling on what's going to happen in the future, but the reason I'm bringing everybody together today is because that is not going to happen in this case. ***We're not going to continue to allow the Plaintiff to continue to amend to cure defects and force the defendants to keep filing subsequent motions to dismiss***.

(Hearing, July 18, 2023 at 09:36:40 – 09:37:36).  The undersigned then granted Plaintiffs ***"one final opportunity to file an amended complaint and plead their"*** best case having had an opportunity to consider all of the defendants' motions to dismiss.  The undersigned cautioned Plaintiffs' counsel that many claims were deficient or subject to dismissal for a

number of reasons including qualified immunity, or insufficient pleading of a policy under *Monell*, conclusory allegations, having questionable legal grounds, and that a large number of defendants had been named without sufficient facts to raise viable or plausible claim against them.  The undersigned concluded by cautioning Plaintiffs' counsel:

> This is my way of telling the Plaintiffs that the Plaintiffs have problems with their pleadings and if this is the . . . complaint that you are resting on, your entire case may be dismissed, and even if the entire case is not dismissed, most of the claims would be dismissed.

(Hearing, July 18, 2023 at 09:39:30 – 09:39:50).  The undersigned allowed Plaintiffs 30 days to file another amended complaint and plead their best case.  On August 17, 2023, Plaintiffs filed their third complaint which is correctly entitled Plaintiffs' Second Amended Complaint.  (D.E. 25).  Defendants timely filed the pending Motions to Dismiss.  (D.E. 27, 28, and 29).  For many of the defendants, the instant motions to dismiss are the third motions to dismiss they have presented to the Court.

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be freely given "when justice so requires."  However, leave to amend may be denied for such reasons as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, [or] futility of amendment…"  *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016) (citations omitted).  Plaintiffs have now amended their complaint several times after motions to dismiss were filed.  Plaintiffs were warned that the Second Amended Complaint was likely their final opportunity to amend and they should "plead their best

case." (D.E. 24).  Accordingly, the undersigned recommends Plaintiffs have pleaded their best case and the record does not support allowing further amendment.

## IX.   RECOMMENDATION

For the reasons stated below, the undersigned **RECOMMENDS** the Motions to Dismiss be **GRANTED** in part.  (D.E. 27; D.E. 28 and D.E. 29).  The undersigned **RECOMMENDS** Plaintiffs' § 1983 claims against Defendants Perry, Vasquez and Carabajal in their individual capacities be retained as well as Plaintiffs' claims for damages pursuant to § 1988 and all other claims be dismissed.  Further, as Plaintiffs have been given multiple opportunities to amend their complaint, the undersigned also **RECOMMENDS** Plaintiffs not be permitted to do so again.

ORDERED on December 15, 2023.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).